**Charles Gregory BUTTA**

v.

**ANNE ARUNDEL COUNTY, Maryland.**

**Civ. No. B–77–658.**

United States District Court,
D. Maryland.

June 6, 1979.

Andrew McGill Whelan, Baltimore, Md., for plaintiff.

Richard Lazer Hillman, County Sol. and Betsy K. Dawson, Asst. County Sol., Annapolis, Md., for defendant.

**MEMORANDUM AND ORDER**

BLAIR, District Judge.

Plaintiff Charles Gregory Butta has brought this action against Anne Arundel County, Md., alleging discrimination against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] Mr. Butta, who is white, contends that Anne Arundel County refused to hire him for a position for which he was qualified because of his race. Defendant is an employer within the meaning of Title VII, and all jurisdictional requirements have been met. Jurisdiction over this action is therefore proper under 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 1331, 1343.

The trial of this case began on May 21, 1979, and was concluded the following day. After fully considering all of the evidence presented by both parties,[2] the court makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, whether or not specifically so identified.

**I.**

◼ The order and nature of proof in a private nonclass Title VII action was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected notwithstanding his qualifications; and (4) that after his rejection, the employer continued to seek applicants for the position from persons having plaintiff's qualifications. *Id.* at 802, 93 S.Ct. 1817. The court

---

1. Plaintiff in his second amended complaint also premised this action upon 42 U.S.C. §§ 1981, 1983, and 1985; however, he elected to proceed at trial only under Title VII.

2. The court reserved ruling at trial on the admissibility of the EEOC determination, and will at this time deny admission of the determination. The EEOC findings have not been considered by the court for any purpose.

indicated that these elements necessarily will vary depending on the factual context out of which the case arises. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the plaintiff's rejection. *Id.* The plaintiff must be given an opportunity to show that the stated reason for rejection is in fact a pretext. *Id.* at 804, 93 S.Ct. 1817.

This analysis set forth in *McDonnell Douglas* was reaffirmed by the Supreme Court in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 575, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) and in *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). In addition, it is now established that Title VII prohibits racial discrimination in employment against white persons as well as nonwhites, and the same standards are applicable in both instances. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 280, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The court will analyze the facts of this case in light of these controlling principles.

## II.

Mr. Butta was born in 1947. He went to Trinitarian College in Pikesville, Maryland in 1966 in order to prepare himself to become a Trinitarian priest. As part of his religious training, he participated in various community programs and human relations activities. For the academic year 1968–1969, he attended Morgan State, and at the time decided to leave the Trinitarians. The following year he graduated from Towson State with a B.A. in Urban Sociology. Mr. Butta then attended the University of Maryland School of Social Work and Community Planning. In 1972 he attained a Master of Social Work degree from that institution, and subsequently accumulated eighteen graduate credits toward a doctorate in social administration. While attending the School of Social Work, he worked as a social caseworker for Anne Arundrel County Department of Social Services, as a family therapist at the Psychiatric Institute of University of Maryland Hospital, and as a personnel counseling specialist for the Social Security Administration.

In March of 1973, Mr. Butta applied for the position of executive secretary for the Human Relations Commission of Anne Arundel County. This position had been occupied by Charles White, a black, who had been the executive secretary since 1967 when the Human Relations Commission (HRC) was created. Applications of apparently qualified persons for the executive secretary position were forwarded to the HRC by the personnel office. The HRC reviewed and screened the applications, and interviewed approximately six individuals. Two of those interviewed were Mr. Butta and a Mr. Eurphan McLaughlin, a black. The HRC concluded after the interviewing process that Mr. Butta was its first choice for the executive secretary position, and Mr. McLaughlin its second choice. Apparently, the HRC's preference for Mr. Butta was based upon the poised and knowledgeable fashion in which he handled the interview and upon Butta's superior experience.

The HRC then submitted to Joseph Alton, the County Executive, the names of Mr. Butta and Mr. McLaughlin and designated its order of preference. The County Executive had the sole power to select whomever he desired for the position, regardless of the HRC's preference; however, in the case of the earlier selection process for the first executive secretary, Mr. Alton had selected the individual preferred by the HRC, Mr. White. Mr. Alton transmitted these two names to Don Pennington, the County's personnel officer, so that he could certify that Mr. Butta and Mr. McLaughlin were qualified under the County's regulations. There is no contention nor any evidence to show that being of a particular race was a qualification let alone a bona fide qualification for being executive secretary.

Mr. Alton, without having interviewed Mr. Butta, offered Mr. McLaughlin the position, and very vigorously attempted to persuade him to accept the post. Mr.

McLaughlin, however, declined. Two weeks after his interview by the HRC, and after Mr. Alton had chosen Mr. McLaughlin, Mr. Butta contacted Mr. Pennington in the hope of obtaining an interview with the County Executive. Mr. Butta understood from a conversation with a member of the HRC that Mr. McLaughlin had been selected, and he was seeking through the interview an explanation for the selection that was made as well as an opportunity to persuade Mr. Alton that he was qualified for the position.

Mr. Alton did in fact interview Mr. Butta shortly thereafter. The testimony of Mr. Butta and Mr. Alton differs substantially concerning what transpired at this interview. However, it appears that Mr. Alton did explain to Mr. Butta his views of the executive secretary position and his reasons for selecting Mr. McLaughlin, and told him, according to Mr. Butta, that he preferred a black for the position. The meeting ended amicably. Mr. Alton testified that he had a predisposition prior to the interview against appointing Mr. Butta, but he testified also that this predisposition was based upon reports of his assistants that Mr. Butta was immature emotionally.

In any event, with Mr. McLaughlin having refused the position, and Mr. Alton having determined not to offer the post to Mr. Butta, there was a dearth of qualified candidates. Several months later, Robert Nealy, who worked in the County's budget office, applied for the position of executive secretary for the HRC. Mr. Nealy is black and is the same age as Mr. Butta. He had worked in the budget office for less than a year before submitting this application. Prior to that he had worked as an insurance adjuster after leaving the U.S. Army. In the Army, he was a commanding officer of a company of military police, and obtained experience and training in human relations. He had a B.S. degree in political science.

Mr. Nealy, while in the budget office, had substantial contact with Mr. Alton concerning the preparation of the budget, and Mr. Alton was favorably impressed with him. In view of this fact and the County's policy of promoting its employees, where qualified, to vacant positions, Mr. Alton selected Mr. Nealy for the executive secretary position in July, 1973. Unlike all the other applications, Mr. Nealy's application had not been referred to the HRC for its review.

Some members of the HRC were quite displeased with Mr. Alton's rejection of Mr. Butta and appointment of Mr. Nealy without referral of his application to the HRC. Mr. Alton told several members of the HRC in response to their criticism that his reason for appointing Mr. Nealy was that he wanted a black man for the position. He testified, however, that he told the members this so as not to offend the members by giving his real reason for rejecting Mr. Butta, i. e., that he thought Mr. Butta was too emotionally immature.

After his rejection, Mr. Butta worked for Montgomery County as its Director of Volunteer Services until 1977. During these years, he also had part-time teaching positions at various local colleges and universities. For the academic year 1977–1978, he was an instructor at the Community College of Baltimore, and is currently an assistant professor at Hood College in Frederick, Maryland.

### III.

The first question before the court is whether Mr. Butta has satisfied his initial burden of establishing a prima facie case. The court concludes that he has. First, Mr. Butta is a member of a protected class under Title VII. Second, he applied for a position with the County for which the County was seeking applicants. On the basis of his educational background and work experience, he was qualified for that position. Third, despite his qualifications, Mr. Butta was rejected for the executive secretary post. Finally, the County, after rejecting Mr. Butta, continued to seek applicants for the position from persons with qualifications similar to those of Mr. Butta, and in fact hired Mr. Nealy.

## IV.

Under the principles enumerated in *McDonnell Douglas*, the County must articulate a legitimate non-discriminatory reason for its refusal to hire Mr. Butta. Once the County has done so, the burden then shifts to Mr. Butta to show that the stated reasons are pretextual and that Mr. Butta's race was a factor in the county's determination.

The County asserts that it refused to hire Mr. Butta solely because in the opinion of Mr. Alton and his assistants Mr. Butta was emotionally immature. This contention is supported in part by the testimony of Mr. Alton. Mr. Alton, however, did admit as well that he told several individuals that he did not hire Mr. Butta because a black was preferred for the position. The County attempts to minimize the effect of these statements by Mr. Alton's further testimony that he only announced that a black was preferred so as to justify his hiring decision in the fashion least offensive to the HRC members.

The court finds this position not credible in light of all the evidence, and concludes that the stated reason of Mr. Butta's emotional immaturity was merely a pretext for racial discrimination on the part of the County.

There are several reasons for this conclusion. First, Mr. Alton decided to select the HRC's second choice, Mr. McLaughlin, over its first choice, Mr. Butta. This in itself is not unusual since Mr. Alton had complete authority to select Mr. White's replacement. However, he decided upon Mr. McLaughlin without having interviewed Mr. Butta or investigated any of his references. To reject the choice of the HRC, which spent a great amount of time reviewing applications and interviewing applicants, without more in-depth knowledge of Mr. Butta indicates that Mr. Alton had a predisposition against Mr. Butta.

Second, Mr. Alton's testimony that he rejected Mr. Butta on the basis of his "emotional immaturity" is not satisfactory, since Mr. Alton at the time had little or no basis for determining that Mr. Butta was immature. Mr. Alton had never spoken to Mr. Butta before rejecting him. Mr. Butta's resume was not one which would create an impression that Mr. Butta was emotionally immature. Mr. Alton testified that some assistants told him Mr. Butta was immature, yet he was unable to remember who told him that. Moreover, no one in the personnel office had any significant contact with Mr. Butta until after the decision was made in favor of Mr. McLaughlin; thus, Mr. Alton's assistants had insufficient opportunity to form a judgment as to Mr. Butta's maturity. In addition, the testimony of the HRC members indicates that Mr. Butta gave a very favorable impression, and not one of emotional immaturity, during a somewhat difficult interview.

Third, Mr. Alton's several statements that he preferred a black for the position indicate that in fact race was a factor in the decision. The court is not persuaded by Mr. Alton's present recollection that he only made these statements so as not to offend the HRC members. Mr. Alton commented concerning his racial preferences for the position at least to Mr. Butta and three news reporters who testified at trial as well as the HRC members. In addition, Mr. Alton in 1976, several years after his decision to reject Mr. Butta, acknowledged to a newspaper reporter that he had wanted a black man to be executive secretary. When making such a comment in 1976, Mr. Alton would have had little concern about offending HRC members by an action he had taken three years earlier; the timing of this statement indicates that in fact Mr. Alton did prefer a black man.

The best explanation for the peculiar circumstances surrounding Mr. Butta's application is that Mr. Alton desired a black person for the position and rejected Mr. Butta for that reason. Mr. Alton's action, while no doubt in good faith and under the existing circumstances subjectively reasonable, was based on racial preference. Accordingly, the court concludes that Anne Arundel County has discriminated against Mr. Butta on the basis of his race, and thus has violated Title VII.

## V.

The County, citing *Rogers v. EEOC*, 179 U.S.App.D.C. 270, 551 F.2d 456 (1977), contends that an award of back pay is not appropriate under the facts of this case since, it argues, Mr. Butta would not have been hired even if Mr. Alton had not had a racial preference. The court disagrees. While the court cannot adequately compare the qualifications of the various candidates on the record before it, it is apparent that Mr. Butta was well qualified for the position and was in fact considered the most competent candidate in the view of the HRC, which reviewed all the applications. The court rejects the County's suggestion that Mr. Butta would not have been hired even in the absence of racial considerations by the County. Race was the decisive factor in the County's decision.

Accordingly, an award of back pay under 42 U.S.C. § 2000e–5(g) is appropriate under the circumstances of this case.[3] Mr. Butta and the County have stipulated to the relevant income figures for the years in question; however, the County argues that certain items requested by the plaintiff should not be considered in the computation of back pay.

During the relevant years, Mr. Butta was employed in certain part-time positions, primarily at local colleges as an instructor. For the purpose of computing back pay, the plaintiff has deducted from this total income for the years in question the amount of money he earned at these part-time positions; Mr. Butta contends that if he had been employed as executive secretary he could have supplemented his income by working in these part-time positions. The County contends that Mr. Butta would not as executive secretary have had sufficient time to earn this part-time income, so that these amounts should be considered in mitigation of the back pay award.

The court agrees with Mr. Butta. The testimony of Mr. Nealy indicates that as executive secretary of the HRC he had a sufficient number of free hours to enable him to take numerous courses at night. Similarly, if Mr. Butta had been the executive secretary, he would have been able to teach part-time in the evenings and acquire those supplemental earnings. Accordingly, the court will not include these part-time earnings in determining Mr. Butta's income for the purpose of ascertaining the appropriate amount of the back pay award.

Mr. Butta has requested as a part of the back pay award various amounts for what has been labeled "additional commuting expense." The court will not allow these amounts to be recovered from the County. Mr. Butta's decision to work in Montgomery County and live in Baltimore City was a personal one; the County will not be required to reimburse him for additional expenses he incurred by virtue of such a decision.

Thus, for 1973, the difference between Mr. Butta's net full-time earnings and the executive secretary pay was $3,097.09, plus interest of $1,003.30, for a total loss of $4,100.39. The plaintiff's loss for 1974 was $1,160.30, plus interest of $307.48, for a total of $1,467.78. In 1975, Mr. Butta suffered a loss of $1,038.61, plus interest of $212.92, for a total of $1,251.53. In 1976, plaintiff's loss was $1,439.48, plus interest of $208.72, for a total of $1,648.20. The total amount of loss suffered by Mr. Butta for those four years was $8,467.90.

Mr. Butta will receive no back pay for years beyond 1976. In 1976, his net full-time earnings exceeded the executive secretary pay for that year. It is at that point that the plaintiff was employed at a better paying job than the executive secretary position and that back pay liability of the County terminated. For each subsequent year, Mr. Butta's income would have exceeded the executive secretary pay if Mr. Butta had not decided in 1978 to voluntarily change jobs and reduce his income substantially. Accordingly, an award of back pay under 42 U.S.C. § 2000e–5(g) for years be-

---

3. Mr. Butta originally requested as relief appointment to the executive secretary position. However, this request was withdrawn at the close of trial.

yond 1976 is not appropriate. Mr. Butta will be awarded back pay in the amount of $8,467.90.

### VI.

■ The plaintiff having prevailed, he is under the circumstances of this case entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k).

Accordingly, it is this 6th day of June, 1979, by the United States District Court for the District of Maryland ORDERED:

1. That at such time as the parties have agreed to or the court has determined the proper amount of attorneys' fees to be allowed judgment shall be entered against the defendant and in favor of the plaintiff in the sum of $8,467.90;

2. That counsel for plaintiff and defendant are to confer and attempt to reach a stipulation on the amount of attorneys' fees recoverable by the plaintiff; and

3. That if such a stipulation is not reached, the plaintiff is to file an appropriate pleading on the issue of attorneys' fees within ten (10) days of the date of this order and the defendant shall file any opposition thereto within seven (7) days thereafter.

The Clerk shall mail copies of this Memorandum and Order to all parties.