Julia A. LUCAS, Plaintiff–Appellant,

v.

Elizabeth DOLE, Secretary of Transportation, Defendant–Appellee.

No. 87–2553.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 7, 1987.

Decided Dec. 23, 1987.

George Michael Chuzi (June D.W. Kalijarvi, Penelope J. Stetina, Kalijarvi &

Chuzi, P.C., Washington, D.C., on brief) for plaintiff-appellant.

Lawrence Edward Shearer, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., on brief) for defendant-appellee.

Before WIDENER, MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Appellant Julia Lucas challenges the dismissal of her Title VII[1] job discrimination suit. Lucas, a white woman, argues that she was the victim of reverse discrimination when Rosa Wright, a less qualified black woman, was promoted to the Quality Assurance and Training Specialist position. At the close of Lucas' case, Judge Hilton granted the government's motion for dismissal under Federal Rule of Civil Procedure 41(b), finding that she did not make out a prima facie case. This appeal follows. We reverse and remand.

Julia Lucas and Rosa Wright work for the Federal Aviation Administration (FAA). Both women applied for Quality Assurance and Training Specialist (QATS) positions at the Flight Service Station at Leesburg, Virginia. The FAA's Eastern Regional Personnel Office determined that nineteen applicants, including Lucas and Wright, were qualified for the two available QATS positions. Two local managers interviewed eighteen of the applicants,[2] rating them based on their answers to five questions. They referred the top four[3] to the selecting official, Edward Dietz. Dietz selected Wright and Sharon Hall, two of the four. Lucas scored well below Wright and was not considered by Dietz.[4]

Although the personnel office determined that all nineteen applicants were qualified, Wright did not have a current Pilot Weather Briefing Certificate at the

---

1. 42 U.S.C. § 2000e *et seq.*

2. One applicant withdrew voluntarily after getting another job.

3. The top four scorers were three black females, including Wright, and a white male.

4. In her testimony, Lucas admitted that she scored in the bottom third among the interviewees, and that those above her included blacks, whites and Hispanics. Joint Appendix at 117–18.

time of her selection, a QATS job requirement.[5] At trial, Lucas presented other evidence in order to show discrimination. She testified to the subjective nature of the interviewing process, which consisted of five broad questions concerning the QATS position. She presented evidence that her answers were detailed and job specific, while Wright's were general and could apply to many jobs. Evidence also showed that in July 1985, Wright was given a temporary assignment involving education and training of students learning about the air traffic control system. The temporary position was not advertised to other workers in the usual way, and Wright was selected before some workers knew of the opening. Five other employees also testified that race may have been a factor in the selection of Wright and in other situations at the Leesburg facility. Favoritism there had helped create poor labor-managment relations, although it is not clear whether the favoritism was racially motivated. Finally, she compared her own experience and qualifications with those of Wright.

At the close of Lucas' evidence, the trial court dismissed her claim under Rule 41(b).[6] He found no evidence that race was involved in the promotion and ruled that Lucas failed to establish a prima facie case.

## I.

A plaintiff can establish a prima facie case of disparate treatment by direct or indirect evidence of discrimination, or under the *McDonnell Douglas*[7] framework. *See Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986) (en banc). To establish a prima facie case under *McDonnell Douglas,* a plaintiff must show (1) she is a member of a protected group; (2) she applied and was qualified for a job that was open; (3) she was rejected, and (4) the job remained vacant. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The prima facie case creates an inference that unlawful discrimination was the reason for the employment action. To rebut this inference, the employer must "articulate some legitimate, nondiscriminatory reason" for its action. *Id.* The plaintiff has the opportunity to show that the stated reason is a mere pretext for a racially motivated decision. *Id.* at 804, 93 S.Ct. at 1825. Within this framework the ultimate burden of persuasion remains on the plaintiff to prove intentional discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207, 215 (1981).

The present case differs from *McDonnell Douglas* in that the position did not remain open after Lucas' rejection. This court has stated that the inference of discrimination is weakened by this fact, and that a plaintiff like Lucas must produce "some other evidence that [her] race was a factor considered by [her] employer in not granting [her] the promotion." *Holmes,* 794 F.2d at 147.

The present case also involves "reverse discrimination;" a member of the white

---

5. Both parties agreed that a current certificate was a job requirement. Wright had been certified in the past, although her certification had expired. She was recertified shortly after assuming the QATS position.

6. Rule 41(b) states:
   (b) INVOLUNTARY DISMISSAL: EFFECT THEREOF. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

7. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

majority is alleging racial discrimination.[8] The Supreme Court has held that Title VII protects whites as well as minorities. *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1975). Although the D.C. Circuit has imposed a higher prima facie burden on majority plaintiffs, we expressly decline to decide at this time whether a higher burden applies.[9] The similarity of the burden imposed under *Holmes* and that imposed by the D.C. Circuit in reverse discrimination cases makes it unnecessary to reach this issue in this case.

## II.

Lucas satisfies the basic requirements of *McDonnell Douglas*, except that the job did not remain open. She is a member of a protected group, whites; she applied and was qualified for the QATS position; and she was rejected. Because the job did not remain open, she was required to produce,

under *Holmes*, some other evidence that race was a factor. In *Holmes*, the use of a subjective interviewing process in promotion of a "very well qualified" candidate did not satisfy the standard. 794 F.2d at 147. In applying its similar standard in reverse discrimination cases, the D.C. Circuit has considered the promotion of a less qualified employee, the use of subjective criteria, and irregular acts of favoritism towards minority employees. *See Bishopp v. District of Columbia*, 788 F.2d 781, 787–88 (D.C. Circuit 2986); *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Circuit 2983); *Machakos v. Meese*, 647 F.Supp. 1253, 1262 (D.D.C.1986). Lucas showed more than the mere use of subjective criteria, including the promotion of an underqualified black, Wright, irregular acts of favoritism toward Wright, the questionable use of a subjective interviewing process, and the opinion testimony of other employees that race was a factor. This evidence satisfies the "some

---

**8.** Although this is a reverse discrimination case, it does not involve an affirmative action plan implemented because of past discrimination.

**9.** The D.C. Circuit has applied a higher standard in reverse discrimination cases because "it defies common sense to suggest that the promotion of a black employee justifies an inference of prejudice against white co-workers in our present society." *Parker v. Baltimore & O. R.R.*, 652 F.2d 1012, 1016 (D.C.Cir.1981). Generally a white plaintiff must show "background circumstances" that support the suspicion that defendant is "that unusual employer who discriminates against the majority." *See Lanphear v. Prokop*, 703 F.2d 1311 (D.C.Cir.1983); *Parker*, 652 F.2d at 1016; *Machakos v. Meese*, 647 F.Supp. 1253, 1262 (D.D.C.1986). Another formulation requires whites "to offer other particularized evidence, apart from their race or sex, that suggests some reason why an employer might discriminate against them." *Bishopp v. District of Columbia*, 788 F.2d 781, 787 (D.C.Cir. 1986). This higher standard can be met in a variety of ways. *See Bishopp*, 788 F.2d at 787–88 (defendant promoted less qualified minority employee; use of subjective, rather than objective, criteria; internal and external pressure to favor minorities); *Lanphear*, 703 F.2d at 1315 (qualified white passed over for black whose qualifications were not checked; pressure to increase minority percentages); *Machakos*, 647 F.Supp. at 1262 (irregular acts of favoritism toward minority employees; racial disproportionality in promotions; pressures to increase percentages of minority employees). Direct evi-

dence of discriminatory intent is not required, although it would obviously strengthen a plaintiff's case. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983); *Teamsters v. United States*, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977); *Warren v. Halstead Indus.*, 802 F.2d 746, 752 (4th Cir.1986).

Other courts have refused to apply a higher burden in reverse discrimination cases. They have relied on the language used by the Supreme Court in *McDonald*, and the spirit of equality underlying Title VII. In *McDonald*, the Supreme Court held "that Title VII prohibits racial discrimination against the white petitioners in this case upon the same standards as would be applicable were they Negroes...." 427 U.S. at 280, 96 S.Ct. at 2579. In *McDonald*, the Court found a violation when a company took harsher disciplinary actions against two whites than it took against a black involved in the same conduct. Since then, several courts have invoked the broad "same standards" language used in *McDonald*. *See e.g. Daye v. Harris*, 655 F.2d 258, 262 n. 11 (D.C.Cir.1981) ("That she is white is no impediment to the suit; white employees are protected by Title VII." The court found the plaintiff had established her prima facie case, and did not need to present direct evidence of racial motivation); *Butta v. Anne Arundel County*, 473 F.Supp. 83, 86 (D.Md. 1979) (Title VII prohibits discrimination against whites, and "the same standards are applicable." Plaintiff made out a prima facie case as a member of a protected class, whites).

other evidence" standard of *Holmes* and establishes a prima facie case.

Because she made out a prima facie case, the district court erred in granting the employer's Rule 41(b) motion.

REVERSED AND REMANDED.