**Carolyn SIMMONS, Plaintiff,**

v.

**John O. MARSH, Defendant.**

**Civ. A. No. 87–0548–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 26, 1988.

Carolyn Simmons, Washington, D.C., pro se.

Nash W. Schott, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I. *Introduction*

This is a Title VII disparate treatment case. Plaintiff, a black female and a former illustrator for the Design and Illustration Division of the Army's Institute of Heraldry, claims that she was denied a promotion to a position as an illustrator in the Creative Heraldry Division because of her race and sex. In essence, she contends she was more qualified than the white male selected for the position in question and was denied promotion enhancing assignments.

Defendant seeks summary judgment. On the record presented, the threshold question is whether plaintiff's subjective belief that she was more qualified than the white male who received the promotion is sufficient to establish the requisite fourth prong of a *prima facie* case of intentional discrimination. *See Holmes v. Bevilacqua,* 794 F.2d 142, 146, 147 (4th Cir.1986) (en banc). Next, assuming, *arguendo,* the existence of a *prima facie* case, the question then becomes whether plaintiff has presented any facts to show that the employer's articulated reason for the decision is a pretext for discrimination.

## II. *Background*

Plaintiff first became an illustrator for the Institute of Heraldry (the Institute) in September, 1971. Thereafter, and until 1984, plaintiff worked in the Design and Illustration Division of the Institute, a group of seven illustrators.[1] In 1981, plaintiff applied for a promotion to a position in the Creative Heraldry Division. This division is a five-person group responsible for creating heraldic design and art for the United States government.[2] Plaintiff's name was submitted to Jay C. Morris, chief of the division, along with the three other applicants who were placed on the "best qualified" list.[3] Morris chose a white male candidate, John Sproston, who had been an Institute illustrator since February, 1979.

According to Morris, Sproston was selected because of his superior artistic ability and potential for creative heraldic design.[4] Morris emphasized that because the Creative Heraldry Division is charged with developing the highest level of design and art in the United States government, he believed that it was his responsibility to hire the most capable artists available.[5] In the course of his duties as chief of the Creative Heraldry Division, Morris had ample opportunity to observe and compare the work of illustrators in the Design and Illustration Division. Thus Morris, who is also a working artist, was able to assess the various illustrators' strengths and weaknesses on a daily basis. Based on his observation of plaintiff's work over the years, Morris concluded that she demonstrated only average talent and that her skills had not improved.[6] By contrast, Morris noted that Sproston's work was immediately noticeable and attractive and showed potential for advancement. Morris affirmed that his decision to promote Sproston rather than plaintiff was based solely on merit, not on plaintiff's race or sex.[7]

Plaintiff, believing that Morris' decision was tainted by race and sex discrimination, lodged a formal complaint with the Department of the Army on September 8, 1981. *See* 32 C.F.R. § 588.14 (1987). To support her claim, plaintiff asserted that she was more qualified for the position than Sproston, that plaintiff's and Sproston's supervisor, Charles Reynolds, had given preference to Sproston in assigning more creative non-heraldry work, thus allowing him to use his creative ability, and that black females were discriminated against at the Institute. After an investigation, the Civilian Appellate Review Agency issued a written finding that Morris' reason for selecting Sproston was legitimate and that plaintiff had not been the victim of unlawful discrimination.[8] *See* 32 C.F.R. § 588.17–.19 (1987). A hearing before an Equal Employment Opportunity Commission (EEOC) Complaints Examiner also resulted in a determination of no discrimination.[9] *See* 32 C.F.R. § 588.24–.25 (1987). This determination was upheld by the Deputy Assistant Secretary for Equal Employment Opportunity Compliance and Complaints Review.[10] *See* 32 C.F.R. § 588.26 (1987). Plaintiff then appealed to the EEOC, which affirmed the Army's conclusion of no discrimina-

---

1. Plaintiff resigned from her position as illustrator on May 24, 1984. Complaint, ¶ 1.

2. The Creative Heraldry Division designs official symbols, such as emblems and coats of arms, for the United States Army. It also provides artistic design services to other government agencies. The Design and Illustration Division primarily executes the designs of the Creative Heraldry Division, although its artists also create some original designs. Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment [hereinafter "Defendant's Memorandum"], Exh. 11, at 13–14.

3. Morris is a white male.

4. Defendant's Memorandum, Exh. 5 (affidavit of Jay C. Morris submitted in response to plaintiff's administrative complaint).

5. *Id.* at 1.

6. *Id.* at 2.

7. *Id.* at 2.

8. Defendant's Memorandum, Exh 15.

9. Defendant's Memorandum, Exh. 16.

10. Defendant's Memorandum, Exh. 17.

tion.[11] *See* 32 C.F.R. § 588.57–.58 (1987). Subsequently, plaintiff instituted this action.[12] *See* 42 U.S.C. §§ 2000e–16, –5(f)(1); 32 C.F.R. § 588.59 (1987).

This is not plaintiff's first case against the Army for discriminatory failure to promote. She pursued a nearly identical claim beginning in 1978. At that time, plaintiff filed a complaint alleging that Jay C. Morris, the same selecting official involved in this case, had discriminated against her by promoting a white male to the Creative Heraldry Division. The United States District Court for the Eastern District of Virginia denied plaintiff's claim. The Fourth Circuit upheld the ruling in an unpublished *per curiam* decision. *Simmons v. Marsh*, No. 83–1036, slip op. (July 12, 1986).

In this, her second action alleging discriminatory failure to promote, plaintiff is *pro se*. Sensitive to this and to the need to proceed with caution in ruling on summary judgment motions in Title VII cases, this Court has given plaintiff more than one bite at the summary judgment apple.[13] Thus, defendant's motion for summary judgment, originally scheduled to be heard on November 20, 1987, was continued to give plaintiff a further opportunity to re-spond to the motion. *Simmons v. Marsh*, No. 87–0548–A (E.D.Va. Nov. 20, 1987). The Court specifically advised plaintiff of her right to file counter-affidavits and other responsive material. She was given additional time to file such material, and she was warned that her failure to do so might result in the entry of summary judgment against her. *Id.* Plaintiff subsequently availed herself of this opportunity and submitted a response to defendant's motion, together with exhibits. Oral argument was rescheduled for December 18, 1987. After the parties' presentations on December 18, the Court gave plaintiff yet another opportunity to file material in opposition to defendant's motion. To aid the parties in framing and focusing their submissions, the Court issued a discursive order setting forth the principles that would govern resolution of the summary judgment motion. *See Simmons v. Marsh*, No. 87–0548–A (E.D.Va. Dec. 29, 1987) (order granting leave to file additional material, attached as appendix). Both parties filed further materials in response to the December 29th Order.[14] The Court has taken all of these materials into account in resolving this motion.

---

**11.** Defendant's Memorandum, Exh. 18.

**12.** Plaintiff is unquestionably entitled to a *de novo* hearing on her discrimination claim in this forum. *Chandler v. Roudebush*, 425 U.S. 840, 863–64, 96 S.Ct. 1949, 1960–61, 48 L.Ed.2d 416 (1976). The Court notes, however, that the record before it on this motion is voluminous and well-developed: it includes personnel documents, affidavits, the transcript of sworn testimony before the EEOC complaints examiner and the reports and opinions of the administrative officials who have been involved in this case. These materials are pertinent on summary judgment. *See id.* at 863 n. 39, 96 S.Ct. at 1961 n. 39 (prior administrative findings are admissible in federal-sector trial *de novo*); *Sperling v. United States*, 515 F.2d 465, 484 (3d Cir.1975) (agency record can be reviewed on a motion for summary judgment); *Cordy v. Shephard*, 481 F.Supp. 67, 69 (E.D.Pa.1979) (same); *Jones v. United States Postal Serv.*, 78 F.R.D. 196, 200 (E.D.Mich.1978) (administrative record may be the basis for a grant of summary judgment).

**13.** *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975) (*pro se* plaintiff entitled to understandable notice of what is required in a summary judgment context).

The Fourth Circuit has made clear that trial courts should be cautious in disposing of Title VII cases summarily because intent and motive are often at the heart of the case. *See Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). But caution is not prohibition. As this Court noted in its December 29, 1987 Order, *Simmons v. Marsh*, No. 87–0548–A (E.D.Va.) (attached as appendix), the benefits of summary judgment—avoidance of unnecessary, expensive and protracted proceedings—apply no less to Title VII cases than to other types of litigation. *See Ballinger*, 815 F.2d at 1005; *Meiri*, 759 F.2d at 998.

**14.** The December 29th Order (attached as appendix) also advised plaintiff that if she needed certain discovery on the issues raised by defendant's motion, she should so advise the Court by January 19, 1988 and describe with specificity the discovery she believed was needed. Plaintiff elected not to respond to this invitation.

**1492**

### III. *Analysis*

Analysis properly begins with *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), where the Supreme Court reviewed the allocation of proof burdens and order of presentation in Title VII disparate treatment cases. The Court's conclusions may be easily summarized. First, the plaintiff must prove by a preponderance of the evidence "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 253, 101 S.Ct. at 1094 (footnote omitted). If plaintiff successfully carries this burden, the defendant must produce evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason. *Id.* at 254, 101 S.Ct. at 1094.[15] Should the defendant, in turn, meet this burden, the plaintiff must be given an opportunity to prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253, 101 S.Ct. at 1093. The burden of proving intentional discrimination remains at all times with the plaintiff. *Id.*

### A. *Prima Facie Case*

■ The Fourth Circuit recently set forth the requirements for proving a *prima facie* case in a failure to promote situation:[16]

[plaintiff] must show (i) that [she] belongs to a racial minority; (ii) that [she] applied and was qualified for the job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications [or] some other evidence that [her] race was a factor considered by [her] employer in not granting [her] the promotion.

*Holmes v. Bevilacqua*, 794 F.2d 142, 146, 147 (1986) (en banc). In this case, the first three conditions are indisputably met. Defendant argues, however, that plaintiff has failed to satisfy the fourth prong. Plaintiff responds that the fact that a white male was promoted raises an inference of discrimination.

In *Holmes*, a qualified black male was rejected for promotion in favor of a white male. The Fourth Circuit held that plaintiff had not established a *prima facie* case, thus implicitly rejecting the view that the fourth prong may be met by a showing that several applicants applied for an acknowledged vacancy, one applicant was hired, and that applicant was not within complainant's protected group. *Id.* at 146–47; *see also Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1385 (4th Cir.1987) (plaintiff who was rejected in favor of a white applicant failed to make out a *prima facie* case).[17] Plaintiff in this case must therefore adduce some additional evidence to create an inference of discrimination.

---

**15.** The defendant's burden is merely to articulate a legitimate nondiscriminatory reason for the challenged action. *Burdine*, 450 U.S. at 248, 101 S.Ct. at 1089. The defendant is neither required to prove that it had a convincing, objective reason for the challenged action nor that the individual preferred over the plaintiff is more qualified than the plaintiff. *Id.* at 256–259, 101 S.Ct. at 1095–97.

**16.** Because plaintiff has produced no direct or sufficiently probative indirect evidence of discrimination, she must resort to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), model for making out a *prima facie* case. *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986).

**17.** With regard to the fourth prong of the *McDonnell Douglas* test, it should be noted that in the failure to promote context, some circuits and, indeed, the Fourth Circuit in the original panel decision in *Holmes*, have imposed a lighter burden of proof than does the en banc *Holmes* decision. *See Holmes v. Bevilacqua*, 774 F.2d 636, 639 (4th Cir.1985) (panel) (fourth prong satisfied by a showing that position not abolished), *withdrawn*, 794 F.2d 142 (en banc); *Bell v. Bolger*, 708 F.2d 1312, 1316–17 (8th Cir. 1983) (a showing that the position was filled with someone from outside the protected group is sufficient to satisfy the fourth prong and establish a *prima facie* case); *Valentino v. United Postal Serv.*, 674 F.2d 56, 63 (D.C.Cir.1982) (same).

Plaintiff's assertion that she was more qualified for the position than Sproston, if supportable, might provide an inference of discrimination. *Holmes,* 792 F.2d 142, 147. Yet, plaintiff justifies this allegation with no more than her own assessment of her capabilities as compared to those of Sproston. This is not enough. As noted in *Smith v. Flax,* 618 F.2d 1062 (4th Cir.1980), a plaintiff's perceptions as to her qualifications are irrelevant; it is the judgment of the selecting official that is at issue. *Id.* at 1067; *see also Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir. 1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Moreover, nothing submitted by plaintiff in response to defendant's motion supports the contention that Sproston was less qualified than plaintiff.[18] On the contrary, as plaintiff's own submissions show, Reynolds, a black male, gave Sproston a "promotion evaluation" rating higher than plaintiff's. While plaintiff had more experience at the Institute than Sproston, the merit promotion announcement advertising the position makes clear that length of service was not a hiring criterion.[19] Both Reynolds and Morris testified during the administrative hearing that length of service at the Institute was not significant in evaluating the candidates' qualifications for the position sought, as this factor did not necessarily correlate with artistic and creative ability.[20]

Further, Sproston came to the Institute with a knowledge of heraldry.[21]

Plaintiff's contention that Reynolds favored Sproston in the assignment of non-heraldry work is also unconvincing. Reynolds' affidavit affirms that both Sproston and plaintiff received several non-heraldry assignments.[22] Moreover, in an affidavit submitted in response to the previous litigation and made part of the record for purposes of this motion,[23] Reynolds stated that he considered non-heraldry projects to be "junk" assignments and that he did not believe that they advanced one's career. In any event, as plaintiff admits in her initial response to defendant's motion, her portfolio, which Morris reviewed before filling the position at issue, contained many items of a non-heraldic nature. Presumably, therefore, these samples allowed Morris to consider plaintiff's artistic ability and creativity in the non-heraldic context.

Finally, plaintiff's conclusory allegation that black females are discriminated against at the Institute fails to raise an inference of discrimination.[24] Plaintiff has not presented any data as to the number of black females in the relevant labor market who were qualified for a position in the Creative Heraldry Division, much less any data bearing on the number of eligible black female applicants or the number of vacancies which have occurred in the Creative Heraldry Division during the relevant time period.[25] *Hazelwood School Dist. v.*

18. The Court's views on the quality of plaintiff's and Sproston's art are irrelevant to the disposition of this case. Nonetheless, the Court notes that the submitted exhibits reflect that both are talented illustrators.

19. Plaintiff's Response to Defendant's Motion for Summary Judgment [hereinafter "Plaintiff's Response"], Exh. 10.

20. Defendant's Memorandum, Exh. 11, at 49, 129.

21. *Id.* at 32, 104–05, 129–30.

22. Plaintiff's Response, Exh. 2.

23. Plaintiff's Response, Exh. 2. Plaintiff also complained of Reynolds' assignment of non-heraldry projects in the first case involving Morris' promotion of a white male.

24. The Supreme Court has cautioned lower courts regarding the limited evidentiary value of

evidence of minority underrepresentation in disparate treatment cases:

> [S]uch ... determinations, while helpful, may not be in and of themselves controlling as to an individualized [employment] decision, particularly in the presence of an otherwise justifiable reason for [the decision].

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 n. 19, 93 S.Ct. 1817, 1826 n. 19, 36 L.Ed.2d 668 (1973).

25. Morris, who has been the chief of the Creative Heraldry Division since 1977, stated before the EEOC complaints examiner that he believed plaintiff was the only black female who had applied for a position in his division during his tenure.

During oral argument on defendant's motion for summary judgment, plaintiff stated that at the time she worked for the Institute, she had attained the highest grade level of any black female. Thus, plaintiff presented the possibility

*United States,* 433 U.S. 299, 308 & n. 13, 97 S.Ct. 2736, 2742 & n. 13, 53 L.Ed.2d 768 (1977); *see also Colon–Sanchez v. Marsh,* 733 F.2d 78, 82 (10th Cir.) (statistics which merely compared number of Hispanics in labor pool, rather than number of *qualified* Hispanics in labor pool, with number of Hispanic employees were entitled to minimal weight in showing intentional discrimination), *cert. denied,* 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984); *EEOC v. Chesapeake & Ohio Ry. Co.,* 577 F.2d 229, 233 (4th Cir.1978) (evidence that only one position of fifty-one was held by a black person did not establish a *prima facie* case; there had been only seven vacancies during relevant time period and EEOC presented no evidence as to the number of qualified blacks in labor pool). Moreover, the Civilian Appellate Review Agency's investigative report, although it is certainly not conclusive on the issue of whether black women were underrepresented at the Institute, states that blacks and women were represented in supervisory and senior positions. Of six divisions, the chiefs of two were female. The chief of plaintiff's division was a black male, and three out of seven illustrators in the division were women. One of four illustrators in the Creative Heraldry Division was a female.[26]

Because plaintiff has presented no facts demonstrating that race or sex was a factor in her rejection, she cannot make out a *prima facie* case of discrimination. Summary judgment is therefore warranted. *See Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005–06 (4th Cir.) (upholding grant of summary judgment at the *prima facie* case stage), *cert. denied,* —— U.S. ——, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987).

### B. *Defendant's Reason for the Challenged Action*

■ Even assuming that plaintiff has successfully carried her initial burden of proof,[27] summary judgment is nonetheless appropriate, for defendant has articulated a legitimate, nondiscriminatory reason for its decision which plaintiff has failed to rebut. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). As discussed above, Morris chose Sprotson over plaintiff because Sproston's qualifications were superior to plaintiff's, and plaintiff's subjective assertion that she possessed superior qualifications is insufficient to prove unlawful discrimination.[28] Affidavits submitted by defendant provide firm support for its claim that Morris did not reject plaintiff for illegitimate reasons of sex or race. Reynolds, a black division chief who worked with Morris for thirty years, stated that he had no reason to believe that Morris would discriminate be-

---

that black women were underrepresented in areas other than the Creative Heraldry Division. Even assuming that statistics regarding other divisions would be relevant to plaintiff's claim of discriminatory refusal to promote, she has provided no data concerning the number of employees at the Institute, the number who were black females at the relevant time or the number of qualified black females in the labor pool or the applicant base. *See Lilly v. Harris–Teeter Supermarket,* 720 F.2d 326, 338 (4th Cir. 1983) (inference of discriminatory intent from hiring data is not warranted in determining whether discriminatory intent was the cause of disparity in promotions data where there was no evidence that supervisory personnel in hiring and promotion contexts were the same), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984).

**26.** Defendant's Memorandum, Exh. 15, at 2.

**27.** While plaintiff has not met the fourth prong of the *Holmes* test, that test is not followed in

some other circuits and has been criticized. *See supra* note 17; *see also* Note, *The Fourth Circuit Review,* 44 Wash. & Lee L.Rev. 505, 675–77 (1987). Accordingly, this Court does not rest its grant of summary judgment solely on the lack of a *prima facie* case under *Holmes,* but also on the absence of any evidence that defendant's reasons are pretextual.

**28.** The fact that Morris' decision involved a subjective assessment of Sproston's and plaintiff's portfolios does not render the articulated reason illegitimate. *Page v. Bolger,* 645 F.2d 227, 230 (4th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981); *EEOC v. Aetna Ins. Co.,* 616 F.2d 719, 726 (4th Cir.1980) (Equal Pay Act) (subjectivity is inherent in employment decisions; if there are demonstrable reasons for the decision, unrelated to unlawful discrimination, subjectivity is permissible).

cause of race or sex.[29] A female illustrator for the Creative Heraldry Division affirmed that she was promoted to the division over two males with considerably more experience and that she did not believe that she had been discriminated against because of her sex during her tenure at the Institute.[30]

Because plaintiff has provided no facts indicating that the employer's reason for rejecting her were discriminatory, summary judgment is appropriate. The Court does not doubt plaintiff's good faith in believing that illegitimate considerations of race and sex cost her the promotion. But a subjective good faith belief that discrimination has occurred is not sufficient to rebut the defendant's legitimate, nondiscriminatory reason for the promotion decision. It is in precisely these circumstances that the purposes of summary judgment should be given effect. In the words of the Second Circuit:

> the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation.... To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.

*Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *see also Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987) (in age discrimination case, summary judgment at pretext stage was proper).

## IV. *Conclusion*

No genuine issue of material fact exists as to whether plaintiff can establish either a *prima facie* case of intentional discrimination or that defendant's reason for rejecting her was pretextual. Plaintiff has presented no facts indicating that she can successfully carry either burden. Accord-

ingly, defendant is entitled to summary judgment.

## APPENDIX

Carolyn Simmons, Plaintiff,

v.

John O. Marsh, Defendant.

Civ. A. No. 87–0548–A

In the United States District Court for the

Eastern District of Virginia

Alexandria Division

### ORDER

This matter is before the Court on defendant's motion for summary judgment. The parties have briefed and orally argued the matter. For the reasons stated below, the Court defers ruling on the motion, pending receipt of further submissions by the parties.

Courts should be cautious in ruling on summary judgment motions in Title VII cases, for intent and motive are often involved. *See Ballinger v. North Carolina Agric. Extension Service,* 815 F.2d 1001, 1005 (4th Cir.1987); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829 [106 S.Ct. 91, 88 L.Ed.2d 74] (1985). But this does not mean that summary judgment is never, or even seldom, appropriate. On the contrary, the benefits of summary judgment—avoidance of unnecessary, expensive and protracted proceedings—apply no less to discrimination cases than to all other types of litigation. *See Ballinger,* 815 F.2d at 1005; *Meiri,* 759 F.2d at 998. Courts are simply cautioned to take special care in connection with Title VII summary judgment motions. It is in recognition of this duty of special care that the Court defers ruling on the motion at bar to give both parties a further opportunity to file additional affidavits or memo-

---

**29.** Defendant's Memorandum, Exh. 19.
 Reynolds also gave anecdotal testimony during the administrative hearing concerning Morris' opposition to racial discrimination during

an era when such action was unpopular. Defendant's Memorandum, Exh. 11, at 119–20.

**30.** Defendant's Memorandum, Exh. 20.

 randa, if they wish to do so.[1]

To defeat summary judgment, plaintiff must present facts sufficient to establish a *prima facie* case. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 [101 S.Ct. 1089, 1093–94, 67 L.Ed. 2d 207] (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–02 [93 S.Ct. 1817, 1823–24, 36 L.Ed.2d 668] (1972); *Ballinger,* 815 F.2d at 1005–06. Next, if defendant articulates a legitimate non-discriminatory reason for the promotion decision in issue, plaintiff must raise a genuine issue of material fact on this point or suffer summary judgment. *See Dea v. Look,* 810 F.2d 12, 15–16 (1st Cir.1987).

Plaintiff has shown that she is a member of a protected minority, that she was qualified for the promotion and that she did not get it. This satisfies three of the four requirements for a *prima facie* case. *See Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986). For the fourth prong, she must show some other evidence that her race and sex were a determining factor in the employment decision. *See Autry v. North Carolina Dep't of Human Resources,* 820 F.2d 1384, 1386 (4th Cir.1987). To date, she has proferred two additional reasons: (i) her subjective view that she was more qualified than her rival and (ii) her opinion that she was denied promotion-enhancing non-heraldic assignments. If plaintiff wishes to submit any further affidavits on this issue, she must do so on or before January 12, 1988. Similarly defendant may, if he chooses, submit any further materials bearing on this issue by the same date. In particular, defendant should focus especially on the facts and significance of the plaintiff's contention that she was denied promotion-enhancing non-heraldic assignments. In this connection, the Court notes that plaintiff's portfolio, which was apparently reviewed by the selecting official, included an adequate sample of plaintiff's non-heraldic work.

Assuming plaintiff establishes a *prima facie* case, defendant can prevail on summary judgment only by showing (i) that the reason for the disputed employment decision was legitimate and non-discriminatory and (ii) that there is no genuine issue of *material* fact on this point. *See Dea v. Look,* 810 F.2d 12, 15–16; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 [106 S.Ct. 2505, 91 L.Ed.2d 202] (1986). Defendant's affidavits disclose a valid, non-discriminatory reason for promoting plaintiff's co-worker over plaintiff, namely that the co-worker had more artistic and creative ability than plaintiff and was thus better suited for the promotion. That this asserted reason includes subjective elements does not prevent according it sufficient weight to rebut the initial inference of discrimination. *See Holmes,* 794 F.2d 142, 147–48; *Page v. Bolger,* 645 F.2d 227, 230 (4th Cir.), *cert. denied,* 454 U.S. 892 [102 S.Ct. 388, 70 L.Ed.2d 206] (1981).

Defendant may, if he chooses, file additional material on this issue on or before January 12, 1988. Plaintiff must be given an adequate opportunity to show that defendant's explanation is a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. 792, 804 [93 S.Ct. 1817, 1825, 36 L.Ed. 2d 668]; *Lucas v. Dole,* [835 F.2d 532, 533–34] No. 87–2553, slip op. at 5 (Dec. 23, 1987). Thus, plaintiff may file whatever rebuttal material she chooses on or before January 19, 1988.[2] Thereafter, the Court will decide this matter without further oral argument.

The Clerk is directed to send copies of this Order to all counsel of record.

December 29, 1987.

---

**1.** Special caution is also warranted with respect to summary judgment where, as here, plaintiff is *pro se. See Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975).

**2.** Discovery does not appear warranted. Nonetheless, should plaintiff conclude that certain discovery is necessary on these issues, she should so advise the Court on or before January 19, 1988, and describe specifically what discovery she believes is needed.