James F. EDWARDS,
Plaintiff-Appellant,

v.

KAISER ALUMINUM & CHEMICAL
SALES, INC., Defendant-Appellee.

No. 74–2864.

United States Court of Appeals,
Fifth Circuit.

July 16, 1975.

Eugene E. Stearns, Guy B. Bailey, Jr., Miami, Fla., for plaintiff-appellant.

Wm. Reece Smith, Jr., Tampa, Fla., for defendant-appellee.

Before BELL, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

James F. Edwards sued Kaiser Aluminum & Chemical Sales, Inc. (Kaiser), his former employer, for damages for an allegedly wrongful discharge because of his age, in violation of the Age Discrimination in Employment Act, Title 29, U.S.C., Sec. 621 et seq.[1] The district court granted Kaiser's motion for summary judgment because Edwards failed to give the Secretary of Labor timely notice of his intent to sue, as required by Sec. 626(d)(1).[2] We affirm.

The controlling facts were stipulated by the parties. We accept for purposes of review, as the lower court did in granting summary judgment, Edwards' contention that Kaiser's termination of his employment violated the ADEA. On June 30, 1971, Kaiser discharged Edwards, its South Florida Sales Office Manager then fifty years old, after seventeen years employment. At the time of the discharge, Kaiser had failed to post notice of the ADEA as required by Sec. 627[3] and 29 C.F.R. Sec. 850.10.[4] In early September 1971, Edwards consulted an attorney to determine his legal rights. The attorney pressed claims with Kaiser on Edwards' behalf, and wrote Kaiser to express concern that the discharge was effected to deprive his client of maximum retirement benefits, but either he was unaware of or he did not advise appellant of remedies available under the ADEA, since it is undisputed that Edwards had no actual knowledge of the Act for more than six months following his discharge. The 180 day period during which Edwards was entitled to file notice of intent to sue with the Secretary of Labor lapsed without the requisite notice having been given.

In May 1972, after consulting a second set of attorneys, Edwards finally learned of his rights under the statute. On May 17, 1972, his new attorneys gave Kaiser written notice of additional claims, including possible ADEA violations. They did not, however, give the Secretary no-

---

1. The parties agreed to a voluntary dismissal without prejudice as to an additional count alleging fraud after the district judge refused to grant Kaiser's motion for summary judgment thereon.

2. (d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

   (1) within one hundred and eighty days after the alleged unlawful practice occurred, . .
   . . . . . . .
   Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

3. Section 627. Notices to be posted
   Every employer, . . . shall post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Secretary setting forth information as the Secretary deems appropriate to effectuate the purposes of this chapter.

4. 29 C.F.R., Section 850.10. Notices to be posted
   Every employer, . . . which has an obligation under the Age Discrimination in Employment Act of 1967 shall post and keep posted in conspicuous places upon its premises the notice pertaining to the applicability of the Act prescribed by the Secretary of Labor or his authorized representative. Such a notice must be posted in prominent and accessible places where it can readily be observed by employees, . . .

tice of intent to sue until February 16, 1973, more than one and a half years after the allegedly wrongful discharge and more than eight months after sending Kaiser the letter asserting Edwards' rights under the ADEA.

In the court below and on appeal, Edwards argued that Kaiser's failure to post notice of the statute constituted constructive fraud excusing his own failure to file notice with the Secretary within 180 days of discharge because he had no actual knowledge of his statutory rights in that 180 day period and the failure to post removed his "means of knowledge". He excuses the failure to give notice within 180 days of actual knowledge by arguing that the statutory period is a condition precedent which, unlike a statute of limitations, cannot be tolled. If it runs when his failure to file is excused, later acquired knowledge cannot resuscitate it.

Kaiser eschews labeling the 180 day period as either a condition precedent or a statute of limitations, arguing that, whatever it be called, it is a mandatory, jurisdictional requirement which can never be waived because of conduct on its part, but, at most, tolled until Edwards knew or should reasonably have known of his remedy. Since Edwards failed to give notice within 180 days of discharge, of hiring an attorney, or of actual knowledge, the maximum permissible period for filing lapsed. Kaiser further argues that even if the 180 day period cannot be tolled, and an employer may be estopped from raising the time bar because of failure to comply with Sec. 627, it is inappropriate to do so in the present situation because Edwards' retention of an attorney to pursue legal remedies for wrongs arising out of the discharge well within the 180 day period provided Edwards with ample "means of knowledge", and obviated any possible detriment resulting from breach of its statutory duty.

The district court rejected appellant's contention that the employer's failure to post notice relieved an employee of any obligation to file with the Secretary but indicated it would toll the 180 day period, which would begin to run anew no later than the time the employee acquired actual knowledge of his rights under the ADEA. The court thus determined that Kaiser's failure to post notice did not excuse Edwards' failure to file notice with the Secretary of Labor within 180 days of actual knowledge of his ADEA rights. The court deemed this circumstance of controlling significance and hence that it was unnecessary to decide whether the first and earlier retention of legal counsel would start the period running even though that attorney was either unaware of the statute or failed to advise Edwards of his rights under it.

■ At issue is the jurisdiction of the district court where the employee and the employer have failed to comply, respectively, with Secs. 626(d)(1) and 627. Sec. 627, as implemented by 29 C.F.R. Sec. 850.10, n. 3 and 4, *supra*, requires an employer to post in conspicuous places a notice of employee rights under the ADEA. No penalties are set out for violation of this duty, and the legislative history sheds little light on its intended purpose. Because of the novelty of the rights created, however, and congressional awareness that "the volume of complaints" under state age discrimination legislation "is related to public awareness of the law as a result of promotional activity, rather than to the effect of discrimination", 1967 U.S. Code Congressional and Administrative News, p. 2215, it is reasonable to infer that the posting requirement was intended to alert older employees to their newly created rights. This information would enable an employee to protect these rights, by pursuing his claims independently or by procuring an attorney to press his rights.

■ Sec. 626(d)(1), see n. 2, *supra*, provides that a civil action may be commenced only on giving the Secretary of Labor 60 days' notice of intent to sue, filed within 180 days of the allegedly unlawful act complained of. Notification and the 60 day notice period is re-

quired in order to give the Secretary an opportunity to comply with his statutory duty of seeking to eliminate any discriminatory practices by "informal methods of conciliation, conference, and persuasion". See Secs. 626(b) and 626(d). Only after this period of informal negotiation may the Secretary or an aggrieved individual sue to enforce statutory rights. See Secs. 626(b), (c) and (d).

The efforts of the Secretary are an integral part of the statutory scheme,[5] as we have had previous occasion to comment upon:

> Perhaps the most interesting feature of the origin of the 180 day notice limitation is that it appeared in the original bill as introduced in the Senate, was deleted from the House passed bill, and was restored by the amendment in the Senate when the House bill was returned for consideration by the upper chamber. The House concurred in the amendment. Its restoration, together with that of several other portions of the original Senate bill, was "intended to answer some of the disquiet in American business . . . keeping also in mind the practical problems of administration, . . ." 113 Cong.Rec. 35056 (Remarks of Senator Javits).

Powell v. Southwestern Bell Telephone Co., 5 Cir. 1974, 494 F.2d 485, 488.

We also remarked upon the additional benefits secured during the six month notice period:

> It is logical that the 180 day notice was intended to insure that potential defendants would become aware of their status and the possibility of litigation reasonably soon after the alleged discrimination since the notice goes from the Secretary of Labor on to the employer involved. In turn this would promote the good faith negotiation of employers during the 60 day conciliation period and provide an opportunity for preservation of evidence and records for use at a trial necessitated by failure of negotiation.

*Id.*; see Cochran v. Ortho Pharmaceutical Co., E.D.La.1971, 376 F.Supp. 302.

While Sec. 626 contemplates benefits to the employer and individual employee, it benefits other employees as well by eliminating discriminatory practices and policies. Further, the notice alerts the Secretary of Labor to situations which affect other employees and allows him to determine whether agency litigation should be initiated. See Bishop v. Jelleff Associates, Inc., D.D.C.1974, 7 EPD Cases ¶ 9214; Burgett v. Cudahy Co., D.Kan.1973, 361 F.Supp. 617. It enhances employee/employer relations by encouraging voluntary rectification and precludes premature resort to the courts, conserving judicial resources. See Burgett v. Cudahy Co., supra.

▆ The central importance to the statutory scheme of invoking the investigative and conciliatory powers of the Secretary impels us to hold that an employer's failure to comply with Sec. 627 does not extinguish completely an employee's duty to file timely notice of his intent to sue. To hold otherwise would unnecessarily frustrate Congressional will. Whether noncompliance justifies tolling the running of the 180 days until such time as the employee seeks out an attorney or acquires actual knowledge of his ADEA rights, thereby fulfilling the purposes of Sec. 627 was designed to accomplish, see text discussion of Sec. 627, *supra*, is an issue we need not reach on this record because of appellant's failure to file notice within 180 days of securing counsel or within 180 days of actual knowledge.[6]

---

**5.** See Brennan v. Ace Hardware Corp., 8 Cir. 1974, 495 F.2d 368, where the court, recognizing the role of the Secretary as vital, affirmed a judgment for the employer because the Secretary failed to substantially comply with his statutory duties of attempting voluntary employer compliance with the requirements of the Act.

**6.** Edwards has contended that the grant of summary judgment was improper because there remain for determination factual questions as to whether his conduct was sufficiently reasonable as to justify the invocation of principles of equitable estoppel. In view of our resolution of the legal issues involved, this argument fails.

█ No forceful argument can be made in support of a complete waiver. Edwards argues that Sec. 626(d)(1) requires notice to the Secretary within 180 days of the allegedly wrongful act in order to bring such claims to the attention of the Secretary "speedily". See Cochran v. Ortho Pharmaceutical Co., supra, 376 F.Supp. at 303. Once the 180 days pass, he believes this purpose is totally frustrated and can be eliminated entirely. We agree that the purpose of the 180 day period is to prevent consideration of stale claims and to promote peace as quickly as possible. See *Powell,* supra. We disagree, however, with the conclusion appellant draws from this. For to read out of the statute this central enforcement mechanism would encourage, or at least enable, an aggrieved individual to sleep on his rights until the statute of limitations has almost expired, removing all impetus to speedy resolution. All the interests heretofore referred to—the promotion of informal, good faith negotiation and voluntary compliance, speedy and peaceful resolution of claims, preservation of evidence and records, and conserving court resources—are better protected through tolling than complete eradication of a clear Congressional directive. Tolling, rather than waiver, would also supply a remedy commensurate with the wrong.[7]

█ In *Powell*, a panel of this court held that the 180 day notice provision is a mandatory, jurisdictional condition precedent to suit. Although the employee in *Powell* had been twice advised of the 180 day requirement before it ran and still failed to comply, the reasoning and language are fully apropos.

> [I]t is simply a prerequisite to the right to file any suit whatsoever under the ADEA.

Appellant goes on to cite the legislative history pertaining to the ADEA in support of the proposition that the 180 day limit is not jurisdictional in nature, but merely directory. While nothing in that history addresses the precise question, we find that there is some support for, if anything, a contrary view. House Report 805, in discussing the companion requirement of a 60 day waiting period between notice of intent and the actual filing of suit, characterizes the notice as a "condition precedent" to filing. A permissible inference is that the requirement of timeliness attending the notice is likewise a condition precedent to suit. H.R.Rep.No.805, 90th Cong., 1st Sess. (1967); 1967 U.S.Code Cong. and Admin.News pp. 2213, 2218. Later in the same report it is noted that "persons intending to file civil actions under this act *must* give the Secretary of Labor 60 days' notice before doing so." (Emphasis supplied). 1967 U.S.Code Cong. and Admin.News p. 2223. More to the point, the Senate Report stated that "in the case of suits brought by individuals notice of intention to sue *must* be given the Secretary of Labor within 180 days after the alleged unlawful practice occurred, . . ." (Emphasis supplied). S.Rep.No.723, 90th Cong., 1st Sess. (1967); 113 Cong. Rec. 31251.

494 F.2d at 487–88. The 180 day notice requirement appears in the subsection expressly dealing with time limits on civil actions; and we noted that the statutory language "is abundantly clear". 494 F.2d at 488. Appellant's contention that equitable considerations may relieve an employee of the necessity of any compliance with Sec. 626 is accordingly rejected.

Our attention has been directed to only two cases which address this issue, Bishop v. Jelleff Associates, Inc., D.D.C. 1974, 7 EPD Cases ¶ 9214 and Hiscott v. General Electric Co., N.D.Ohio 1974, 8 EPD Cases ¶ 9735. In *Bishop*, the district court excused the plaintiffs' failure to timely file notice with the Secretary because of the employer's failure to post

---

7. Appellant points to the fact that the Secretary, when finally notified, did not undertake to effect reconciliation. He overlooks the fact that under no circumstances could the notice be deemed timely.

notice. It based its holding upon the relative "newness" of the statute at the time of suit, the plaintiffs' lack of sophistication, and their oral representation to the Department of Labor that the employer was terminating large numbers of elderly employees.

The district court in *Hiscott* expressly disapproved the *Bishop* decision as against the weight of authority, citing *Powell*, and as contrary to authority within the District of Columbia Circuit. Additionally, it distinguished *Bishop* because the statute could no longer be considered new, the greater sophistication of the *Hiscott* plaintiff, and the failure to make any timely representation to the Department of Labor which could constitute constructive notice.

We find *Bishop* to be unpersuasive authority. In *Powell*, we expressly disapproved of any substitute for notice of a personal intent to sue. 494 F.2d at 489. It is too late in the day to urge the statute's "newness", assuming *arguendo* that this argument might earlier have been persuasive. Further, Mr. Edwards cannot be considered an unsophisticated person. At the time of his discharge, he suspected that age was a motivating factor and promptly consulted an attorney, which in any event more than made up for whatever sophistication he arguably lacked.

The district court in *Hiscott* apparently refused to consider a tolling of the limitations period. Whether equitable considerations may ever result in tolling is an issue we do not reach, as indicated *supra*, because of appellant's failure to file within 180 days of discharge, of hiring his first attorney, or of actual knowledge.[8]

8. We feel constrained to note that, even if the 180 day period could be waived, this is a singularly inappropriate situation for such a remedy, in view of the fact that Edwards consulted an attorney long before the 180 day period ran. In such a circumstance, he had the "means of knowledge" of his ADEA rights, for the very purpose of consulting an attorney is to ascertain what legal redress arises out of a

In the circumstances of this case, we are unwilling to charge against the employer the inaction of appellant's attorneys.

Affirmed.

factual situation encompassing a supposed wrong. While it may be inequitable to allow an employer to benefit from his own wrong, it would be at least equally unfair to then hold that the employer is estopped from raising the 180 day bar where the injured employee consulted an attorney who either slept on his client's rights or did not believe he had any under the statute.