**Robert PLOWMAN, Plaintiff,**

v.

**Richard CHENEY, Secretary of Defense; John O. Marsh, Secretary of the Army; and Army Morale Welfare Recreation Fund, Defendants.**

**Civ. A. No. 89–00073–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 5, 1989.

Kenneth E. Labowitz, Fagelson, Schonberger, Payne & Arthur, Oakton, Va., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Henry E. Hudson, U.S. Atty., Alexandria, Va., Barbara Ward, Asst. U.S. Atty., Anne M. Gulyassy, John R. Tyler, Neal Dittersdorf, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This is a discrimination action under the Vocational & Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.* (the "Act"). Plaintiff, a civilian employee of the Army Morale Welfare Recreation Fund, a Nonappropriated Fund Instrumentality (NAFI) of the Department of the Army, alleges that defendants violated the Act by forcing him to resign after a test indicated he was HIV seropositive.[1] This is plaintiff's second attempt to obtain a remedy for his forced resignation. The first was based on theories of contract, implied covenants, right of privacy and intentional infliction of emotional distress. It did not succeed. *See Plowman v. Department of the Army*, 698 F.Supp. 627 (E.D.Va.1988).

The matter is now before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment on the ground that plaintiff failed to exhaust administrative remedies. More specifically, the applicable regulations required plaintiff to initiate administrative review within 30 days of the discriminatory action. *See* 29 C.F.R. § 1613.214(a)(1)(i). Defendants claim plaintiff failed to do so within 30 days of his learning of the requirement and

is therefore now barred from seeking a judicial remedy. Plaintiff resists the motion, arguing chiefly that a material factual dispute exists over whether plaintiff qualifies for an extension of the 30 day period. For the reasons stated here, the Court concludes that undisputed material facts establish that plaintiff learned of the requirement in 1987, but thereafter waited well beyond the 30 day limit to file his request for administrative review. Accordingly, summary judgment in favor of defendants is warranted.

### Facts[2]

In April 1986, plaintiff, then assigned to duty in Korea, tested HIV seropositive. He claims he was then forced to resign. Two days later, on May 19, 1986, he was shipped back to the United States. His executed resignation form is dated May 17, 1986, but was not effective until September 25, 1986. Defendants did not then advise him of any administrative complaint procedure for discrimination claims.

In April 1987, plaintiff filed a *pro se* lawsuit in the United States District Court for the Northern District of California. This lawsuit included a claim of handicap discrimination under the Act. Plaintiff unsuccessfully sought *in forma pauperis* status. Thereafter, in late September or early October 1987, a California law firm undertook his representation *pro bono*. At that time, as plaintiff stated in his initial affidavit,

> I learned for the very first time that there was an administrative discrimination complaint procedure and that I was supposed to have brought a handicap discrimination complaint with the Army within 30 days of being forced to resign.

He went on to note that his attorneys advised him to proceed with the existing lawsuit rather than to initiate an administra-

---

1. Positive results from the HIV test indicate the presence in a person's blood of antibodies to the AIDS virus. Persons who test positive, though they may demonstrate no symptons of the AIDS-related complex (ARC) or AIDS, are infectious and can spread AIDS to others. *See* Board of Trustees Report, *Prevention and Control of Ac-*

*quired Immunodeficiency Syndrome: An Interim Report,* 258 J.Med.Ass'n 2097, 2101 (Oct. 16, 1987).

2. For a more complete statement of facts, see *Plowman v. Department of the Army*, 698 F.Supp. 627 (E.D.Va.1988).

tive complaint. In a subsequent affidavit, plaintiff essentially repeats this. He said his lawyer advised him that federal employees had to file administrative complaints within 30 days, but he was not sure plaintiff, a NAFI employee, fell into this category. Even so, plaintiff's second affidavit goes on to say that

> [my lawyer] said that I probably should have tried to submit a complaint but that since I hadn't, and had never been told that I had to, he did not know what more I could then do.

Plaintiff accepted this October 1987 advice, and proceeded with the handicap claim in the lawsuit rather than initiating an administrative complaint.

The lawyer's affidavit reflects a somewhat different perspective, but closely read does not directly contradict plaintiff's clear declaration as to his understanding that he was supposed to have filed an administrative complaint within 30 days.[3] In his affidavit, the lawyer confirms he represented plaintiff in October 1987 and concedes he then knew that federal employees were required to initiate a complaint with a local agency EEO counselor within 30 days of learning of the discriminatory act or event. But he then goes on to express his confusion and uncertainty over (1) whether that requirement applied to NAFI employees and (2) what to do if it did apply to plaintiff. The lawyer chose, apparently, not to research answers to these questions. He claims that he did not specifically advise plaintiff that the 30 day limit applied to plaintiff's claim.

Thereafter, on December 23, 1987, defendants in the California action filed a motion to dismiss, *inter alia*, raising the exhaustion issue. Plaintiff's lawyer then did the research and confirmed that plaintiff was indeed required to file an administrative complaint within 30 days before filing suit. Plaintiff learned this in early January 1988. Plaintiff discontinued the handicap claim in his California suit. His lawyer was still confused and uncertain over what to do to meet this requirement. In mid-January 1988, plaintiff's counsel contacted

California defense counsel and requested assistance in arranging for plaintiff to initiate an administrative complaint in the United States. The lawyer claims the Army agreed to do so, but arrangements were not completed until April 21, 1988 when plaintiff met with an EEO officer, ostensibly to help plaintiff initiate the administrative complaint procedure.

Subsequently, the Army rejected plaintiff's administrative complaint as untimely. Plaintiff appealed this decision to the EEOC Office of Review and Appeals. The appeal failed; the EEOC affirmed the agency's action, ruling that the complaint was untimely and that plaintiff did not qualify for the regulatory exception provided in 29 C.F.R. § 1613.214(a)(4). *See Robert Plowman v. John O. Marsh, Jr., et al.,* Appeal No. 01883415 (EEOC Dec 20, 1988). Specifically, the EEOC found that plaintiff's decision not to consult with an EEO counselor, even after his attorneys notified him of the exhaustion requirement and the 30 day limitations period, did not constitute "circumstances beyond his control" under subsection (a)(4).

### Analysis

■ The Act affords individuals a private right of action for violations of its provisions. In doing so, it expressly incorporates the "remedies, procedures and rights" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. *See* 29 U.S.C. § 794a(1). Among these Title VII remedies and procedures is an administrative claims procedure that is a prerequisite for seeking a judicial remedy. Thus, EEOC regulations provide that "the agency may accept the complaint for processing ... only if"

> (i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe that he has been discriminated against within 30 calendar days of the date of the matter, or, if a personnel action, within 30 days of its effective date;

3. Plaintiff's Virginia counsel was not involved in these events nor in the California proceedings.

29 C.F.R. § 1613.214(a). The 30 day time period may be extended only in certain limited circumstances. Thus Section 1613.-214(a)(4) provides as follows:

> The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency.

In short, the Act affords a remedy governed by Title VII procedures and those procedures mandate the initiation of an administrative complaint procedure within 30 days of the discriminatory event. Federal employees, including NAFI employees, must comply with EEOC regulations before a suit may be filed. *See Young v. National Center for Health Services*, 828 F.2d 235, 237 (4th Cir.1987); *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969–970 (4th Cir.1985); *Woodard v. Lehman*, 717 F.2d 909, 914 (4th Cir.1983). Moreover, where an employee fails to make timely contact with an EEO counselor, as required by 29 C.F.R. § 1613,214(a)(i), and neither Section 1613.214(a)(4) nor equitable estoppel extends the 30 day limitations period, then his suit must be dismissed for failure to exhaust his administrative remedies. *See Zografov*, 779 F.2d at 969–70; *see also Woodard*, 717 F.2d at 914–15.

Dismissal is appropriate because the administrative remedy serves important functions in the overall statutory scheme. As the Supreme Court recognized in *Brown v. General Services Admin.*, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976), the statute "provides for a careful blend of ad-ministrative and judicial enforcement powers," and "rigorous administrative exhaustion requirements." [4] The 30 day initiation requirement is an integral part of this design; it is no mere technicality; rather, it is "part and parcel of the congressional design to vest in the federal agencies and officials ... 'primary responsibility' for maintaining non discrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C.Cir.1983). "The 30 day rule is designed 'to insure the initiation of counseling' with the hope of achieving an informal and prompt resolution." *Theard v. U.S. Army*, 653 F.Supp. 536, 542 (M.D.N.C.1987) (quoting *Perel v. Health Car Financing Administration*, slip op. at 3–4 (4th Cir.1986) [804 F.2d 678 (Table) ]); *see also Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir.1980). If failure to meet the 30 day deadline did not bar suit, Congress' scheme for administrative dispute resolution would be undermined. *See Kizas*, 707 F.2d at 544; *Sampson*, 632 F.2d at 862. In sum, because the 30 day deadline is an important aspect of the Act's remedial scheme, failure to meet it bars a suit.

In the case at bar, it is undisputed that more than 30 days elapsed between plaintiff's resignation and any contact by plaintiff with an EEO counselor concerning the alleged act of discrimination.[5] The focus here, therefore, must be on whether the tolling provisions of 29 C.F.R. § 1613.214(a)(4) operate to save plaintiff's claim. Under that provision, the time limit is extended if plaintiff shows he was not notified of the time limits and not otherwise aware of them or prevented from complying by circumstances beyond his control. Again, it is undisputed that plaintiff had no

---

**4.** In *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969), the Supreme Court listed the reasons for the exhaustion requirement. It is designed to (1) avoid premature interruption of the administrative process, (2) allow the agency to develop a factual record, (3) permit the agency to exercise its administrative expertise and discretion, (4) conserve judicial resources by requiring complainants to first seek resolution of their complaints with the agency before flocking to court, (5) provide the agency an opportunity to correct its own errors, and (6) deter "frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.; see also Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed. 2d 522 (1975).

**5.** Plaintiff's resignation was executed on May 17, 1986 to become effective in September 25, 1986. Plaintiff did not have contact with an EEO counselor on his complaint until April 21, 1988.

notice or awareness of the 30 day time limit until at least October 1987 when a firm agreed to represent him. Thus, Section 1613.214(a)(4) plainly tolled the commencement of the 30 day time period until at least this time. The question is when thereafter did plaintiff receive notice of, or otherwise become aware of, the 30 day limit so as to trigger the commencement of the time period.[6] In terms especially familiar to our times, the question is what did plaintiff know and when did he know it.

Dispositive on this issue are plaintiff's sworn declarations. He concedes that in October 1987 he "learned for the first time" of the 30 day limit and that he "was supposed to have brought a handicap discrimination complaint with the Army within 30 days of being forced to resign." In his second affidavit, plaintiff alludes to the uncertainty concerning the application of the 30 day limit to him as a NAFI employee. But significantly, plaintiff goes on to state that his lawyer advised him that he "probably should have tried to submit a complaint. . . ." These declarations make unmistakably clear plaintiff's understanding in October 1987 that he should have filed a complaint with the Army within 30 days of his forced resignation. At this point, therefore, the tolling effect of Section 1613.214(a)(4) ceased and plaintiff should then have filed his complaint within 30 days of gaining this understanding.[7]

Nor is a different conclusion warranted because plaintiff had no notice of the tolling provision in Section 1613.214(a)(4). Under the plain language of the regulation, whether plaintiff is entitled to tolling depends on notice of the 30 day limit, not on notice of the tolling provision. *See Connolly v. U.S. Postal Service*, 579 F.Supp. 305, 307–08 (D.Mass.1984). Consistent with this conclusion, the regulations require posting of notice of the 30 day limit, not of the tolling provision. *See* 29 C.F.R. § 1613.204(f)(4). In sum, plaintiff's declarations reflect that he had the same general notice of the 30 day limit that regulations require agencies to provide their employees. Given this, plaintiff is not entitled to any tolling after October 1987.

■ Even if this Court were to disregard plaintiff's declarations or to consider them as too ambiguous to reflect notice, plaintiff's continuous representation by counsel from early October 1987 serves independently to halt the tolling. While some courts have held that a single meeting with counsel may not preclude equitable tolling,[8] continued representation does end the tolling period. *See generally, Jacobson v. Pitman–Moore, Inc.*, 573 F.Supp. 565, 569–70 (D.Minn.1983).[9] The operative principle is simple: continued representation by an attorney "extinguishes the equitable reasons for tolling the [time] period" for initiating a claim of employment discrimination with the agency. *Morse v. Daily Press, Inc.*, 826 F.2d 1351, 1353 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395

---

**6.** Although the regulation is not explicit, it is clear that plaintiff is not entitled to extend the time period more than 30 days from the time he receives notice or becomes otherwise aware of the time limitation. *See Wolfolk v. Rivera*, 729 F.2d 1114, 1117 (7th Cir.1984) (once the facts "should have been apparent to a person with a reasonably prudent regard for his rights," he must submit the matter to the agency's EEO counselor within 30 days in order to take advantage of [29 C.F.R. § 1613.214(a)(4) ] ) (*quoting Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975)).

**7.** *See supra* n. 4.

**8.** *See Thornhill v. Marsh*, 866 F.2d 1182 (9th Cir.1989); *Ettinger v. Johnson*, 556 F.2d 692, 698 (3d Cir.1977) (dicta); *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), *aff'd by an equally divided court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed. 2d 270 (1977). Affirmance by an equally divided Supreme Court prevents the *Dartt* case from becoming a binding precedent. *Hertz v. Woodman*, 218 U.S. 205, 213–14, 30 S.Ct. 621, 622–23, 54 L.Ed. 1001 (1910).

**9.** *See Clark v. Resistoflex Co., Div. of Unidynamics*, 854 F.2d 762, 768 (5th Cir.1988); *Keysee v. California Texas Oil Corp.*, 590 F.2d 45 (2d Cir. 1978) (per curiam); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109–10 (2d Cir. 1978); *Edwards v. Kaisar Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975); *Dimetry v. Department of the Army*, 637 F.Supp. 269, 271 (E.D.N.C.1985); *Sanders v. Duke University*, 538 F.Supp. 1143, 1146 n. 2 (M.D.N.C.1982); *see also Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1173 (D.Mass.1983) (same principle in ADEA case).

(1987) (discussing equitable estoppel). The rationale for this principle is that a federal or private employee [10] who obtains counsel:

ha[s] the "means of knowledge" of his [employment discrimination] rights, for the very purpose of consulting an attorney is to ascertain what legal redress arises out of a factual situation encompassing a supposed wrong. While it may be inequitable to allow an employer to benefit from his own wrong, it would be at least equally unfair to then hold that the employer is estopped from raising the 180 day bar where the injured employee consulted an attorney who either slept on his client's rights or did not believe he had any under the statute.

*Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195, 1200 n. 8 (5th Cir.1975).[11]

Plaintiff's argument that he relied on his counsel's advice does not excuse his failure to file an administrative complaint; nor does his counsel's failure to do the research or make the appropriate inquiries. In "our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962). When a complainant obtains a "means of access to counsel" he obtains "a means of discovering the basic information concerning Title VII." *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 110 (2d Cir.1978). A failure to comply with the 30 day time limit is not excused by a tactical decision to pursue alternative avenues of relief. *See Hewlett v. Russo,* 649

F.Supp. 457, 461 (E.D.Va.1986); *Adams v. Bailar,* 426 F.Supp. 263 (E.D.Va.1976). Thus, even if plaintiff had not received notice of the 30 day time limit, his retention of counsel in October 1987 stopped the tolling effect of Section 1613.214(a)(4).

Plaintiff seeks to avoid this result by citing *Thornhill v. Marsh,* 866 F.2d 1182 (9th Cir.1989). There, the Ninth Circuit found a factual dispute existed over whether the claimant received notice, and in this connection, remarked that "the circumstance that Thornhill consulted an attorney may be relevant evidence, but is hardly conclusive." *Thornhill* is not controlling; it is significantly distinguishable. Plaintiff in that case had but a single consultation with an attorney before meeting with an EEO counselor. *Id.* at 1184. *Thornhill* was not a case where, as here, plaintiff retained an attorney who knew of the 30 day time limit, specifically discussed it with plaintiff and continuously represented plaintiff from initial consultation until plaintiff finally met with an EEO counselor. But to the extent that *Thornhill* is construed to excuse the instant plaintiff, this Court declines to follow its holding as contrary to the better rule that retention of an attorney extinguishes the basis for tolling EEO time limits. To hold otherwise in this case is to signal to attorneys that as long as they remain uncertain or in the dark about their clients' legal obligations, those clients will not be required to comply with, or suffer the consequences of not complying with, EEO regulations. It is precisely this untoward result that is the target of the rule followed here.

---

**10.** There is no meaningful distinction between the administrative procedures for claims of employment discrimination by private or federal employees. *See, e.g., Mondy v. Secretary of the Army,* 845 F.2d 1051, 1054–55 (D.C.Cir.1988); *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir. 1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1985); *Connolly v. U.S. Postal Service,* 579 F.Supp. 305 (D.Mass.1984).

**11.** The Fourth Circuit has never considered whether retention of counsel halts equitable tolling of EEOC claim procedures. It has held that retention of counsel precludes equitable estoppel claims. *See Morse v. Daily Press, Inc.,*

826 F.2d 1351, 1353 (4th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir.1987). The *Morse* court relied on the *Edwards* opinion quoted above in holding that "[r]etaining an attorney extinguishes the equitable reasons for tolling" the statute of limitations on equitable estoppel claims. 826 F.2d at 1353. There is no reason in principle why the effect of retaining an attorney in equitable estoppel cases should be any different from the effect of doing so in equitable tolling cases.

Plaintiff also argues that he and his counsel did not know "with whom to initiate the agency complaint." As his lawyer put it

Mr. Plowman could not return to Korea to initiate the process directly with the EEO Counselor at Camp Humphries. I knew of no other way for Mr. Plowman to initiate the complaint procedure at that point in time.

Counsel's confusion, for reasons already stated, does not save plaintiff's claim. Moreover, nothing in the regulations required plaintiff to meet with the Camp Humphries counselor in Korea. The regulation simply states that an aggrieved person must "consult with an Equal Employment Opportunity Counselor to try to resolve the matter." 29 C.F.R. § 1613.213(a) (emphasis added). The regulation does not require that the contact with an EEO counselor be made at the former place of employment, nor does it preclude contact by mail or telephone. Yet, plaintiff and his counsel chose to do nothing from early October to December 1987.

■ Also unavailing to the plaintiff here is the futility exception to the exhaustion doctrine. This exception excuses a litigant from exhausting administrative remedies if it would be futile to do so. *See Mullins Coal Co. v. Clark*, 759 F.2d 1142, 1146 (4th Cir.1985). Futility exists only when the agency has announced an immutable or hardened position such that the agency's decision is a foregone conclusion. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 641 n. 8, 95 S.Ct. 1225, 1230 n. 8, 43 L.Ed. 2d 514 (1985). The expected agency response must not be merely probable, it must be certain. *Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105–06 (D.C.Cir.1986). The futility doctrine does not apply where, as here, there is no showing that the agency's decision was certain or that there was no possibility that the agency would rule in plaintiff's favor. *See St. Francis Hospital v. Bowen*, 802 F.2d 697, 702 (4th Cir.1986). Moreover, the futility doctrine should not apply simply because a party's failure to meet the EEO time limits may cause his claim to be dismissed. *See Ross v. U.S.*

*Postal Service*, 696 F.2d 720, 722 (9th Cir. 1983) (holding that where an employee has missed the 30 day deadline, he must still initiate the EEO procedure); *Sampson*, 632 F.2d at 862–863; *see also Kizas*, 707 F.2d at 544–545 (expressing doubt whether the futility exception could ever apply to EEO time limits). Contact with an EEO counselor after the 30 day time limit has expired is not futile. The agency may still consider whether to extend the deadline pursuant to 29 C.F.R. § 1613.214(a)(4). *See Ross*, 696 F.2d at 722; *Sampson*, 632 F.2d at 863. Finally, applying the futility doctrine to excuse the plaintiff in the instant case would seriously undermine the efficacy of the exhaustion doctrine. It effectively invites parties to bypass the administrative process simply by missing the deadline and having the agency reject the claim on that ground. The futility exception operates when exhaustion is rendered unnecessary because the agency's answer is a foregone conclusion. It is not triggered by a party's failure to comply with a time deadline. Here, there was no foregone agency conclusion that rendered exhaustion futile. Instead, plaintiff and his counsel caused plaintiff's failure to meet the 30 day time limit. The futility exception is therefore inapplicable.

In conclusion, the Court is mindful that the result it reluctantly reaches here is harsh. Plaintiff unquestionably deserves sympathy. But as the Supreme Court has stated

Procedural requirements established by Congress for gaining access to federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 [100 S.Ct. 2486, 2497, 65 L.Ed.2d 532] (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984). Defendants'

summary judgment motion must therefore be granted.[12]

An appropriate order will issue.

---

12. Of course, there is nothing to prevent the defendants from processing plaintiff's com- plaint, overlooking the failure to meet the time limit as a matter of grace.