**Lewis O. SAUNDERS, Plaintiff,**

v.

**Michael P.W. STONE, Secretary of the Army, Defendant.**

**Civ. A. No. 90–1189–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 20, 1991.

Lewis O. Saunders, Columbia, Md., pro se.

Thomas M. Hollenhorst, Asst. U.S. Atty., Alexandria, Va., Major John H. Belser, Office of the Judge Advocate Gen., Dept. of the Army, Arlington, Va., for defendant.

## ORDER

ELLIS, District Judge.

This is a Title VII disparate treatment case in which plaintiff, a black male and Department of the Army civilian employee, claims that he (i) received an undeserved poor performance rating and subsequent unfair performance appraisals, (ii) suffered a wrongful deduction from his pay, (iii) was forced to accept a job reclassification, and (iv) was repeatedly relocated, all because of his race.[1] This matter is before the Court on defendant's motion to dismiss or alternatively for summary judgment.[2]

For the reasons stated below, the Court concludes 1) that several of plaintiff's claims of discrimination must be dismissed because plaintiff failed properly to pursue and exhaust his administrative remedies in a timely fashion, and 2) that summary judgment on the merits in favor of defendant is appropriate on plaintiff's remaining claims because plaintiff has not established a *prima facie* case of discrimination.

## I

Plaintiff has been a federal employee since 1965. He is currently employed in the Office of the Secretary of the Army. In 1985, while serving as a GM–151–14 (Operations Research Analyst), plaintiff volunteered for an assignment in Europe as an Operations Research Analyst. While in Europe plaintiff received a "minimally acceptable/satisfactory" performance appraisal for 1985–86. He objected to this appraisal, in part by means of an informal Equal Employment Opportunity (EEO) complaint, but the EEO counselor concluded that racial discrimination was not a factor in the appraisal. Plaintiff received a full general pay increase on January 11, 1987. In early 1989, the Personnel and Employment Service of the Army determined, while conducting a review of plaintiff's records at his request, that the 1987 pay increase was erroneous in light of plaintiff's marginal rating. The Army then recouped the overpayment from plaintiff's wages.

When plaintiff returned from Europe in 1987, a reorganization of the Headquarters of the Department of the Army was underway. Among other changes, Operations Research Analyst positions in plaintiff's branch or division were abolished. In April 1988, plaintiff's job series classification was changed from Operations Research Analyst to Management Analyst, apparently with no decrease in salary.

In September 1989, plaintiff filed a formal EEO complaint alleging that his 1985–86 performance rating, the subsequent recoupment action, the reclassification of his

---

1. Plaintiff's complaint also makes reference to his color as well as race. To the extent that plaintiff offers color as a basis of discrimination separate from race, his claims based on color are not cognizable because he did not raise them in the administrative process. Prior to bringing suit in federal court, a plaintiff must exhaust the administrative remedies provided by law and regulation. *See* Part II, *infra.*

2. Sensitive to plaintiff's *pro se* status and to the need to proceed with caution in ruling on sum-

mary judgment motions in Title VII cases, the Court first continued the hearing on defendant's motion to enable plaintiff to obtain counsel and, when counsel was not obtained, entered an order requiring supplemental submissions and specifying what facts were required of plaintiff in the summary judgment context. *See Simmons v. Marsh,* 690 F.Supp. 1489, 1491 (E.D.Va. 1988), *aff'd mem.,* 852 F.2d 566 (4th Cir.), *cert. denied,* 488 U.S. 996, 109 S.Ct. 565, 102 L.Ed.2d 590 (1988).

job series, his lack of promotion to the GM–15 level, his 1988–89 performance rating, and several office relocations or "moves" were the result of racial discrimination. The EEO officer rejected the allegations of job series change, moves, 1988 performance ratings, and failure to promote as untimely brought. The remaining allegations were accepted, investigated, and determined by the Army Civilian Appellate Review Agency to be nondiscriminatory. Plaintiff appealed to the Equal Employment Opportunity Commission (EEOC), which affirmed the EEO officer's rejection of the untimely claims.

## II

■■■ It is firmly established that timely assertion of administrative remedies is a prerequisite to filing an employment discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. *Brown v. GSA*, 425 U.S. 820, 829–32, 96 S.Ct. 1961, 1966–68, 48 L.Ed.2d 402 (1976). With respect to the initial phase of the Act's remedial scheme, the pertinent EEOC regulations provide that an agency having an equal employment opportunity program may accept a complaint only if the complainant brings the alleged discrimination to the attention of an EEO counselor within thirty days of the alleged discriminatory event. 29 C.F.R. § 1613.214(a)(1)(i) (1990). If this counseling fails to resolve the grievance, the employee must then file a formal complaint with the employing agency within fifteen days of the employee's last interview with the EEO counselor. 29 C.F.R. § 1613.214(a)(1)(ii). Federal employees must comply with the EEOC regulations before a suit may be filed. Untimely administrative complaints must be rejected. *See* 29 C.F.R. § 1613.215(a)(4). Similarly, court actions based on untimely administrative complaints must also be dismissed. *See Young v. National Center for Health Services Research*, 828 F.2d 235, 237 (4th Cir.1987); *Zografov v. Veterans Administration Medical Center*, 779 F.2d 967, 969–70 (4th Cir.1985); *Woodard v. Lehman,*

717 F.2d 909, 914–16 (4th Cir.1983). The thirty-day filing period may be extended, or tolled, see 29 C.F.R. § 1613.214(a)(4), but a plaintiff bears the burden of demonstrating that equitable circumstances warrant the tolling. *Zografov*, 779 F.2d at 970.

The record reveals two occasions on which plaintiff brought his allegations to the attention of an EEO counselor. First, plaintiff contacted a counselor in Europe on September 2, 1986 and complained of the performance appraisal rating received in August 1986. Second, plaintiff appears to have contacted an EEO counselor on August 1, 1989 to raise his complaints regarding promotions, job series change, performance ratings, and office moves. *See* Office of the Administrative Assistant, Department of the Army, Notice of Acceptance/Rejection of Discrimination Complaint dated March 16, 1990.

Given the timing of these contacts, many of plaintiff's allegations of discrimination are untimely. To begin with, while plaintiff's initial objection to his performance appraisal received in Europe was timely, he appears not to have pursued this claim. The counselor provided plaintiff with a Notice of Final Interview dated September 15, 1986. According to the regulations outlined above, plaintiff then had fifteen days within which to file a formal complaint. *See* 29 C.F.R. § 1613.214(a)(1)(ii). The record reflects, however, that plaintiff filed his only formal EEO complaint on September 13, 1989. Accordingly, plaintiff's claim regarding the 1985–86 appraisal is untimely.

Similarly, several of plaintiff's other claims are untimely despite his contact with an EEO counselor on August 1, 1989. For example, the record reflects that plaintiff's job series was changed, and plaintiff notified thereof, in April 1988. The Department of the Army EEO officer also found, based on plaintiff's own submissions, that most of plaintiff's allegations regarding failure to promote and office moves stemmed from actions occurring in 1988.[3]

---

**3.** More particularly, plaintiff alleges relocations dated September 1987, March 1988, April 1988

(two relocations), and August 1988. He alleges promotion denials dated June 16, 1988, April 22,

Plaintiff offers no persuasive evidence to explain either that he was unaware of the thirty-day limitations period or that he was unable to comply with it. Nor does plaintiff allege that he was unaware of the alleged discriminatory incidents at the time they occurred. The conclusory assertion in plaintiff's supplemental submission that he was "unable to take immediate legal action" as a result of office relocations does not convincingly justify the failure to pursue EEO counseling or the filing of a formal complaint in September 1989 regarding incidents that occurred, in some cases, more than a year prior to that date. *See Zografov*, 779 F.2d at 968–70 (suggesting that showing of affirmative misconduct would be required to estop the government from asserting the thirty-day limitation as a defense). No specific evidence is offered to suggest that plaintiff was prevented from contacting an EEO counselor or filing a timely EEO charge.

Although its effects may prove harsh, the thirty-day requirement to initiate an administrative complaint is an integral part of Title VII's system for maintaining non-discrimination in employment. *See Plowman v. Cheney*, 714 F.Supp. 196, 199 (E.D. Va.1989). The requirement effects Congress' design of placing primary responsibility for maintaining nondiscrimination in employment on federal agencies and officials rather than courts. *See id.* (quoting *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984)). In sum, the requirement serves multiple administrative and judicial purposes; it is far more than a technicality. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (listing reasons for exhaustion requirement). Consequently, "where an employee fails to make timely contact with an EEO counselor ... and neither [29 C.F.R.] section 1613.214(a) nor equitable estoppel extends the 30 day limitations period, then the suit must be dismissed...." *Plowman*, 714 F.Supp. at 199. Plaintiff failed to bring his allegations of discrimination regarding (i) his 1985–86 performance appraisal; (ii) relocations prior to 1989, (iii) promotion denials prior to October 6, 1989, and (iv) job reclassification, to the attention of an EEO officer within thirty days of becoming aware of the alleged discriminatory event or to file formal complaints within the time limits prescribed by regulation. Accordingly, these allegations must be, and hereby are, DISMISSED.

### III

Plaintiff has four arguably timely claims: 1) promotion claims of October 6, 1989 and May 25, 1990; 2) an office relocation in September 1989 [4]; 3) the allegedly wrongful recoupment from his pay, and 4) the 1988–89 "Fully Successfull" performance rating.[5] As to these claims, plaintiff fails to allege facts sufficient to establish a *prima facie* case.

Title VII disparate treatment analysis is well established. To establish a *prima facie* case of employment discrimination, the plaintiff must show that (1) he is employed by the defendant, (ii) he is a

---

1988, and December 16, 1988. Plaintiff alleges one office relocation and two promotion denials that might be considered timely. *See* Part III, *infra*.

**4.** These promotion and room change claims occurred after plaintiff's contact with an EEO counselor on August 1, 1989, or even after the filing of his formal complaint, and thus suffer from a failure to exhaust administrative remedies. Even assuming that a theory of continuing violation would excuse plaintiff's failure to pursue administrative remedies with respect to these most recent claims, a conclusion that is doubtful, plaintiff's claims do not establish a *prima facie* case under Title VII for the reasons

set forth below. *See* B. Schlei & P. Grossman, Employment Discrimination Law 1042–54 (2d ed. 1983 & Supp.1989) (inconsistent case law has limited the theory of continuing violation but occasionally applies it to a series of discriminatory acts with one act occurring within the charge-filing period or to allegations of an ongoing program of discrimination).

**5.** The Army EEO officer appears to have accepted plaintiff's recoupment allegation because the recoupment commenced with the pay period ending July 1, 1989. The officer appears to have accepted plaintiff's complaint regarding the 1988–89 rating because this rating covered a period ending on July 1, 1989.

member of a protected class, and (iii) that he was treated differently with respect to some condition of employment from others outside his class in a manner that creates an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[6] If a *prima facie* case is established, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff must then show that the reason articulated by the defendant is a mere pretext for discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell*, 411 U.S. at 804, 93 S.Ct. at 1825. Thus, not only must plaintiff establish a *prima facie* case, but he retains the final burden of rebutting the nondiscriminatory reason proffered by the defendant. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384 (4th Cir.1987).[7]

Plaintiff has established the first two elements of a *prima facie* case. Apparently conceding this, defendant focuses on the third element and argues that it is missing. This argument is convincing: plaintiff offers no persuasive evidence that the Army's actions were motivated by consideration of race. A plaintiff must show "some evidence that race was a determining factor in the employer's decision" to take the complained of action. *Holmes v. Bevilacqua*, 794 F.2d 142, 147 (4th Cir.1986) (*en banc*) (promotion context). This evidence may consist of direct evidence of discrimination or indirect evidence whose cumulative probative force supports as a reasonable probability the inference that but for the plaintiff's race a different result would have occurred. *See Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 242 (4th Cir. 1982) (promotion context).

Plaintiff's responses and exhibits fail to satisfy even this relatively undemanding standard. Nothing in these materials constitutes evidence to create an inference of discrimination based on race. No evidence is offered by which the Court may compare plaintiff's treatment or qualifications to that of any other Army employees. At most, plaintiff's responses and exhibits suggest his own perception of discrimination and unspecified hostile remarks of co-workers or supervisors. This is insufficient. An employee's own opinions or conclusory assertions are not enough to establish a *prima facie* case. *See Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845 (4th Cir.1988). More particularly, the mere fact that plaintiff was relocated to a different office location or subjected to a pay recoupment,[8] without any evidence of how other employees were treated, does not raise an inference of discrimination. Similarly, even if plaintiff's submissions did show conclusively—which they do not—that the applicants ultimately selected for the promotions sought by plaintiff were not members of plaintiff's protected group, this fact does not by itself establish that race was a factor considered by the employer. *See Autry v. North Carolina Dep't of Human Resources*, 820 F.2d at 1385 (plaintiff who was rejected in favor of white applicant failed to make out *prima facie* case); *Simmons v. Marsh*, 690 F.Supp. 1489, 1492

---

6. The *McDonnell Douglas* proof scheme for setting forth a *prima facie* case need not apply where a plaintiff produces direct or indirect evidence probative of discrimination. No such evidence has been offered here.

7. In this as in other civil cases, plaintiff bears the burden of establishing his case by a preponderance of the evidence. *Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

8. With respect to the pay recoupment, defendant also offers the non-discriminatory justification, supported by affidavits, that plaintiff received an undeserved salary overpayment as a result of either bureaucratic mistake or a misreading of his performance appraisal from Europe. The overpayment was not discovered until 1989 when, at plaintiff's request, the Army conducted a review of his records. Defendant's affidavits further state that pay recoupment of this type is standard Army procedure in cases of overpayment. Plaintiff does not dispute these facts and presents no evidence to suggest that defendant's rationale is a pretext for discrimination.

(E.D.Va.1988), *aff'd mem.*, 852 F.2d 566 (4th Cir.), *cert. denied*, 488 U.S. 996, 109 S.Ct. 565, 102 L.Ed.2d 590 (1988).[9] Plaintiff also submits several performance appraisals that rated him highly and described some of his skills in glowing terms. These appraisals may well show that plaintiff was qualified for the promotion that he sought. But absent any evidence of comparison with non-minority candidates, they do not support an inference of racial animus. As to plaintiff's 1988–89 appraisal, plaintiff testified in the internal Army investigation that he neither knew what rating he deserved nor could he identify the performance elements that he believed should be higher. Plaintiff presents no facts showing he deserved a higher rating or that another similarly situated employee was treated differently. In sum, plaintiff's evidence, at most, suggests that the Army exercised questionable judgment in certain decisions concerning plaintiff. But this evidence does not reflect any intent to discriminate on the basis of race. There is no automatic presumption that every adverse personnel action directed at a black employee, no matter how qualified, results in a Title VII violation. *Cf. Goldberg*, 836 F.2d at 849 (age discrimination context).

Because plaintiff has presented no facts demonstrating that race was a factor in any action taken against him, he cannot make out a *prima facie* case of discrimination. Summary judgment is thus proper where, as here, there may be some disputed facts, but there is no genuine dispute as to material facts. *Ballinger v. North Carolina Agriculture Extension Service*, 815 F.2d 1001 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); *Simmons v. Marsh*, 690 F.Supp. at 1494. The Court does not doubt plaintiff's good faith belief that illegitimate considerations infected the Army's treatment of him, but a subjective good faith belief is not itself sufficient. When a plaintiff fails to present evidence adequate to establish an essential element of his case, summary

judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.) (summary judgment appropriate where Title VII plaintiff offers only conclusory allegations of discrimination), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Accordingly, as to plaintiff's timely claims defendant's motion for summary judgment must be, and hereby is, GRANTED.

The Clerk is directed to forward a copy of this Order to plaintiff and all counsel of record.

---

9. Additionally, with respect to plaintiff's May 1990 allegation of wrongful failure to promote, defendant offers the non-discriminatory explanation that plaintiff's application was received beyond the closing date for applications. Nothing in plaintiff's submissions persuasively rebuts this explanation or shows it to be a pretext for discrimination.