**STATE ex rel. SCHERFLING**

**v.**

**STATE EMPLOYMENT RELATIONS BOARD.**

[Cite as *State ex rel. Scherfling v. State Emp. Relations Bd.*, 152 Ohio App.3d 484, 2003-Ohio-1936.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–491.

Decided April 17, 2003.

</div>

Bashein & Bashein Co., L.P.A., and W. Craig Bashein;  Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for relator.

Jim Petro, Attorney General, Michael D. Allen and Walter J. McNamara IV, Assistant Attorneys General, for respondent.

BROWN, Judge.

{¶ 1} Relator, Scott Aaron Scherfling, has filed a complaint in mandamus requesting this court to order respondent, State Employment Relations Board ("SERB"), to vacate its March 25, 2002 dismissal of relator's unfair labor practice ("ULP") charge against his union, Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), and to issue a complaint against the FOP.

{¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals.  The parties filed agreed stipulations of fact along with the record of the administrative proceedings.  The magistrate rendered a decision on December 24, 2002, recommending that this court deny relator's request for a writ of mandamus.  (Attached as Appendix A.) Relator has filed an objection to the magistrate's decision, asserting that the magistrate erred in concluding that relator filed his ULP charge over 90 days after learning of his union's alleged violation of R.C. 4117.11.

{¶ 3} The magistrate's decision sets forth the following findings of fact.  On December 8, 1999, relator was hired by Cleveland State University ("CSU") as a part-time, temporary university police officer.  On February 27, 2000, relator was

appointed to a full-time position as a CSU police officer, subject to a one-year probationary period. On February 18, 2001, relator received an "unsatisfactory" written performance evaluation, and was notified at that time that his employment was terminated for "unsatisfactory performance during probationary period."

{¶ 4} A collective bargaining agreement ("CBA") between CSU and the FOP provided for a five-step grievance procedure. On February 26, 2001, relator filed a grievance under the CBA and requested that the FOP represent him. At "Step 3" of the procedure, involving a meeting with the university police chief, relator's grievance was denied. The FOP appealed the denial to a Step 4 hearing before a university vice-president. That hearing was conducted on April 17, 2001, and at the conclusion of the hearing, the vice-president orally informed relator that his grievance was denied. The university vice-president issued a written memorandum, dated April 17, 2001, and the memorandum indicates that it was copied to the university chief of police and FOP representatives.

{¶ 5} Relator then requested that the FOP initiate binding arbitration under Step 5. However, according to the FOP, relator's union representative, Otto Holm, notified relator on May 15, 2001, that the union had made a decision not to arbitrate his grievance. Also during this time, relator hired his own counsel, who sent CSU a letter, dated May 14, 2001, indicating relator's intent to invoke arbitration. Relator claimed, based upon an affidavit executed by his counsel, that he did not receive a copy of the April 17, 2001 CSU memorandum until September 18, 2001.

{¶ 6} On November 21, 2001, relator filed a ULP charge, asserting that he was discharged without just cause and that the FOP breached its duty of fair representation by failing to pursue binding arbitration on the basis that the employee was terminable at will. A SERB labor relations specialist conducted an investigation of the ULP charge and recommended that it be dismissed. On March 25, 2002, SERB dismissed the ULP charge.

{¶ 7} On April 30, 2002, relator filed his complaint in mandamus with this court. In the magistrate's decision recommending denial of the requested writ, the magistrate determined that SERB did not abuse its discretion in finding that the ULP charge was untimely filed, agreeing with SERB's position that the 90–day statute of limitations for the ULP action began to run at least by May 14, 2001.

{¶ 8} In his objection, relator argues that he and his counsel were not aware that the CBA provided that only the union could initiate arbitration under Step 5 and that he did not initially appreciate that the FOP's withdrawal from the proceeding prejudiced his rights or interest in any manner. Relator contends that the doctrine of equitable estoppel should be available under the circum-

stances of this case, as he maintains that the FOP lulled him into complacency with inaccurate assurances. Relator asserts that the charging party must appreciate the "actual damage" that has been caused before the 90–day limitation period begins to run.

{¶ 9}  Although a determination by SERB whether to issue a complaint in a ULP case is not reviewable by direct appeal, mandamus is available to remedy an abuse of discretion by SERB in dismissing ULP charges. *State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, 779 N.E.2d 226, ¶ 6. R.C. 4117.12(B) sets forth a 90–day statute of limitations for filing a ULP charge. In *Tritt*, supra, 97 Ohio St.3d at ¶ 8, the court discussed the issue of timeliness under R.C. 4117.12(B), stating:

{¶ 10}  "Under R.C. 4117.12(B), SERB 'may not issue a notice of hearing based upon any unfair labor practice occurring more than ninety days prior to the filing of the charge with the board.' This provision requires employees to seek prompt redress for unfair labor practices. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 184, 677 N.E.2d 343. 'The ninety-day time period does not commence until the charging party knew or should have known of the conduct which constituted the improper conduct and actual damage ensued.' Id., citing *Fraternal Order of Police, Ohio Labor Council, Inc. v. Hubbard Twp. Trustees* (1990), 68 Ohio App.3d 843, 847, 589 N.E.2d 1386."

{¶ 11}  As indicated above, the magistrate found that, by May 14, 2001, the date of relator's counsel's letter to CSU's vice-president attempting to invoke arbitration, relator knew or should have known that the FOP would not pursue his grievance to binding arbitration. The magistrate concluded that, although relator's counsel was apparently unaware, when he authored the May 14, 2001 letter, that only the FOP could initiate arbitration under the CBA, the letter nevertheless shows that relator was aware that the union would not pursue binding arbitration by that date.

{¶ 12}  Part of the record in this case includes a copy of answers provided by relator to an information-request form. In response to a question asking relator to describe what steps the union took in pursuing the grievance, relator responded in part:

{¶ 13}  "When the grievant was orally advised that the University was not reversing its decision, he requested that the Union proceed to step 5 to binding arbitration. *The Union refused his request* and told him that if he wished to pursue step 5 he could obtain his own counsel and do so at his own expense.

{¶ 14}  "As a result of the conversation with Otto Holm the grievant retained counsel who submitted a written demand for arbitration. * * *" (Emphasis added.)

{¶ 15}  A review of the record supports a finding that, at the time relator's counsel submitted the letter to CSU on May 14, 2001, expressing an intent to invoke arbitration, the university had advised relator that it was not reversing its decision, and relator had also been informed that the union refused his request to submit the matter to arbitration.  Thus, we agree with the magistrate that the letter established the commencement of the running of the statute of limitations.  Further, we agree with respondent that any doubt relator may have harbored should have been dispelled by the union's failure, under the requirements of the CBA, to advance his grievance to Step 5 by May 16, 2001 (30 days following the date the grievance was answered in Step 4, i.e., on April 17, 2001).

{¶ 16}  Relator, however, argues that his attorney was unaware, at the time he mailed the May 14, 2001 letter, that only the FOP could initiate arbitration under the CBA, and relator thus contends that the doctrine of equitable estoppel should apply.  We are unpersuaded.  In general, "ignorance of legal rights does not toll a statute of limitations." *Larson v. Am. Wheel & Brake, Inc.* (C.A.8, 1979), 610 F.2d 506, 510.  In the present case, relator retained and consulted with counsel within the statutory period, and counsel presumably had the opportunity to review the CBA. Under such circumstances, where a party has the "means of knowledge" of his or her rights, courts have declined to extend statutes of limitations based upon estoppel grounds.  *Edwards v. Kaiser Aluminum & Chem. Sales, Inc.* (C.A.5, 1975), 515 F.2d 1195, 1200, fn. 8 (no equitable basis for tolling of statute of limitations where appellant consulted attorney long before statutory period ran; "the very purpose of consulting an attorney is to ascertain what legal redress arises out of a factual situation encompassing a supposed wrong").  Further, an employee's misreading of his contractual rights is not a proper basis for equitable tolling.  *Trnka v. United Auto Workers Union, Local 688* (N.D.Ill.1991), No. 90 C 1073, 1991 WL 28214.

{¶ 17}  Because the record supports the magistrate's finding that relator knew or should have known of the union's refusal to assist him by May 2001, the magistrate correctly concluded that relator's filing of his ULP charge on November 21, 2001, was untimely.

{¶ 18}  Based upon an examination of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained in it.  Accordingly, relator's objection to the magistrate's decision is overruled, and the requested writ of mandamus is denied.

<div align="right">

Objection overruled
and writ of mandamus denied.

</div>

KLATT and TYACK, JJ., concur.

## APPENDIX A

## MAGISTRATE'S DECISION

Rendered on December 24, 2002

## IN MANDAMUS

{¶ 19}   In this original action, relator, Scott Aaron Scherfling, requests a writ of mandamus ordering respondent, State Employment Relations Board ("SERB"), to vacate its March 25, 2002 dismissal of his unfair labor practice ("ULP") charge against his union, Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), to issue a complaint against the FOP, and to conduct a hearing on relator's ULP charge.

### Findings of Fact

{¶ 20}   1. Effective December 8, 1999, Cleveland State University ("CSU") hired relator as a "temporary, part-time" university police officer pursuant to CSU's written offer of employment dated December 8, 1999.

{¶ 21}   2. Effective February 27, 2000, relator was appointed to a full-time position as a CSU police officer under a one-year (365 days) probationary period.

{¶ 22}   3. Probationary police officers at CSU undergo two written performance evaluations during their probationary period.  The first evaluation is at midpoint and the second is at the end of the probationary period.  At midpoint, in August 2000, relator received a satisfactory evaluation indicating that his "[p]erformance meets standards and continues to become still better."

{¶ 23}   4. On February 18, 2001, relator received an "unsatisfactory" written performance evaluation.  The evaluation stated "performance is unsatisfactory; separation or reduction is recommended."  The evaluation form indicated that relator's 365–day probationary period would end February 27, 2001.

{¶ 24}   5. Effective February 18, 2001, CSU notified relator that his employment was terminated.  The reason the notice gave was "unsatisfactory performance during probationary period."

{¶ 25}   6. In the meantime, effective January 1, 2001, a collective bargaining agreement ("CBA") between CSU and the FOP provided for a five-step grievance procedure.  Article XII, CBA. Step 4 provides that "the aggrieved member(s) and/or the Union may file an appeal with the University's Vice President of Human Resources Development and Labor Relations."  Step 4 provides that the university vice president shall schedule a "grievance meeting" and he "shall render a written response * * * after the close of the meeting."  Step 4 further provides that "[a] copy of said response shall be sent to the grievant and the Union representative."

{¶ 26}   7. The CBA's Step 5 provision is as follows:

{¶ 27}   "If the grievance is not satisfactorily settled in Step 4, the Union may submit the matter to binding arbitration by so notifying the Vice President of Human Resources Development and Labor Relations, in writing, within thirty (30) working days following the date the grievance was answered in Step 4 of the grievance procedure.   * * * "

{¶ 28}   8. Article XVII of the CBA is captioned "Performance Evaluation."   It provides in part:

{¶ 29}   "A law enforcement officer who receives an unsatisfactory perfor-mance rating during the probationary period may be removed or demoted for just cause in accordance with the Ohio Revised Code and Ohio Administrative Rules. * * *"

{¶ 30}   9. Article XXI of the CBA is captioned "Probationary Period."   It provides in part: "The original appointment as a University Law Enforcement Officer shall be for a probationary period of one year."

{¶ 31}   10.  On or about February 26, 2001, relator filed a grievance pursuant to the CBA. He also requested that the FOP represent him.   The Step 3 procedure involved a meeting with the university chief of police where relator was represented by the FOP. Relator's grievance was denied at Step 3.

{¶ 32}   11.   The FOP appealed pursuant to Step 4 to the university vice president.   The vice president called a grievance meeting at which relator was represented by the FOP. At the conclusion of the April 17, 2001 meeting, relator was verbally advised that his grievance was denied and that there was an opportunity to pursue binding arbitration at Step 5 through his union.

{¶ 33}   12.  The university vice president issued a written memorandum dated April 17, 2001, stating:

{¶ 34}   "Since I believe that the dismissal of Officer Scherfling in no way violates the collective bargaining agreement between Cleveland State University and the CSU–FOP/OLC, the applicable laws of the State of Ohio nor the regulations in the Ohio Administrative Code and is consistent with applicable rulings of the Ohio Attorney General and decisions of Ohio courts, the grievance related to Scott Scherfling's dismissal is denied."

{¶ 35}   13.  The April 17, 2001 memorandum itself indicates that it was copied to the university chief of police and the FOP representatives.

{¶ 36}   14.  Relator requested that the FOP initiate binding arbitration under Step 5 of the CBA. According to the FOP, on May 15, 2001, relator was notified by his union staff representative, Otto Holm, that the FOP had made the decision not to arbitrate his grievance.   Consequently, relator hired his own counsel.

{¶ 37}    15.  By letter dated May 14, 2001, relator's counsel notified CSU's vice president of relator's "intention to invoke * * * arbitration."  Apparently, CSU did not respond to the May 14, 2001 letter.

{¶ 38}    16.  According to assertions contained in relator's brief filed in this action, on July 27, 2001, he filed an action in the Cuyahoga County Court of Common Pleas seeking a declaration that he was entitled to binding arbitration under the CBA. (Relator's brief at 5.) Relator further asserts in his brief that he voluntarily dismissed the common pleas court action on November 20, 2001, after it became clear that only the FOP could request arbitration under the CBA.

{¶ 39}    17.  According to an affidavit executed by relator's counsel on July 25, 2002, and appended to relator's brief filed in this action, on September 18, 2001, relator's counsel received from CSU's counsel a faxed copy of the April 17, 2001 CSU memorandum.  According to the affidavit, neither relator nor his counsel had ever received the CSU memorandum prior to September 18, 2001.  The magistrate specifically notes here that counsel's July 25, 2002 affidavit appended to relator's brief is not among the documents contained in the stipulations filed by the parties to this action, nor can the "fax cover sheet" dated September 18, 2001, appended to counsel's affidavit, be found among the stipulations filed in this action.

{¶ 40}    18.  On November 21, 2001, relator, through counsel, filed an ULP charge with SERB against the FOP. SERB's ULP form asks the charging party to provide a "statement of facts."  Relator wrote:

{¶ 41}    "[Relator] was discharged without just cause by the employer, Cleveland State University, at the end of his probationary period as a campus police officer.  The applicable collective bargaining agreement superceded [sic] the provisions of the Ohio Revised Code and Administrative Code and expressly provided that probationary employees could only be terminated for cause.  The employee's bargaining representative, the Fraternal Order of Police, breached the duty of fair representation by refusing to pursue binding arbitration on the grounds that the employee was terminable at will.  * * * "

{¶ 42}    19.  On November 30, 2001, a SERB labor relations specialist, i.e., investigator, mailed separate letters to the charging party and the charged party requesting that the parties provide specific information regarding the ULP charge.  Both relator and the FOP responded in writing requests.

{¶ 43}    20.  On February 20, 2002, SERB's labor relations specialist issued his "investigator's memorandum":

{¶ 44}    "* * * The Charging Party knew as of May 14, 2001, that FOP was not pursuing the grievance to arbitration * * *.  No mitigating circumstances were provided to toll the statute of limitations.  The charge was untimely filed

with SERB, well beyond the statute of limitations set forth in ORC § 4117.12(B) and OAC 4117–7–01(A)."

{¶ 45}   21.   On March 25, 2002, SERB dismissed the unfair labor practice charge.   SERB's dismissal order states:

{¶ 46}   "Pursuant to Ohio Revised Code § 4117.12, the Board has conducted an investigation of this charge.   The investigation reveals no probable cause exists to believe the Charged Party has violated Ohio Revised Code § 4117.11. Information gathered during the investigation reveals the Charged Party's decision not to take the grievance to arbitration was based on contract interpretation.   The Charged Party's actions were not arbitrary, discriminatory, or in bad faith.   Additionally, knowledge of the alleged violation occurred more than 90 days before the charge was filed with the Board.   No mitigating circumstances exist that warrant equitable tolling of the statute of limitations.   Accordingly, the charge is dismissed with prejudice for lack of probable cause to believe the statute has been violated and as untimely filed."

{¶ 47}   22.   On April 30, 2002, relator, Scott Aaron Scherfling, filed this mandamus action.

## Conclusions of Law

{¶ 48}   SERB dismissed relator's ULP charge on two grounds:   (1) that the charged party's decision to not take the grievance to arbitration was not arbitrary, discriminatory, or in bad faith;   and (2) that the ULP charge was untimely filed.

{¶ 49}   Because SERB did not abuse its discretion in finding that the ULP charge was untimely filed, and that finding independently supports SERB's dismissal, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 50}   R.C. 4117.12(B) provides that SERB "may not issue a notice of hearing based upon any unfair labor practice occurring more than ninety days prior to the filing of the charge with the board."

{¶ 51}   The 90–day time period does not commence until the charging party knew or should have known of the conduct which constituted the improper conduct and actual damage ensued.   *State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, 779 N.E.2d 226; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 184, 677 N.E.2d 343.

{¶ 52}   Here, SERB maintains that the record conclusively shows that, by May 14, 2001, relator knew or should have known that the FOP would not pursue his grievance to binding arbitration.   May 14, 2001 is the date of relator's counsel's letter to CSU's vice president attempting to invoke arbitration.   SERB

also contends that actual damages ensued as of the date of termination i.e., February 18, 2001. Thus, the later date, i.e., May 14, 2001, would begin the running of the 90-day period. Relator did not file his ULP charge until November 21, 2001, more than 90 days later. The magistrate agrees with SERB's position that the 90-day period began at least by May 14, 2001, and, thus, the ULP charge was untimely filed.

{¶ 53} Although relator's counsel was apparently unaware when he authored the May 14, 2001 letter that only the FOP could initiate arbitration under the CBA, the letter, nevertheless, shows that, by May 14, 2001, relator was aware that the FOP would not pursue binding arbitration.

{¶ 54} Nevertheless, relator maintains that the 90-day period did not begin to run until September 18, 2001, the day that CSU faxed a copy of the April 17, 2001 memorandum to relator's counsel. Relator's argument is premised upon the language of Article XII of the CBA, which provides that a copy of the Step 4 decision "shall be sent to the grievant and the Union representative." According to relator, the 30 "working days" during which the FOP could initiate binding arbitration did not begin to run until relator, through his counsel, received the September 18, 2001 fax.

{¶ 55} The language of Article XII of the CBA does not support relator's position. Article XII provides at Step 5 that the union may submit the matter to binding arbitration "within thirty (30) working days following the date the grievance was answered in Step 4 of the grievance procedure." Relator would apparently read into the terms of the CBA that the Step 4 grievance is not considered "answered" until the grievant actually receives a copy of the written Step 4 decision; however, those terms are nowhere to be found in the CBA.

{¶ 56} The record here shows that the Step 4 grievance was answered on April 17, 2001, the date that CSU's vice president published his memorandum and the date on which relator was verbally informed of the vice president's decision. Clearly, the record shows that the FOP considered the 30 working days to have run as of April 17, 2001.

{¶ 57} Moreover, even if it can be argued that the 30 "working days" did not begin to run until relator's counsel received the faxed copy of the April 17, 2001 memorandum, that proposition does not alter the fact that, by May 14, 2001, relator had clearly been informed that the FOP would not pursue binding arbitration and, thus, relator knew of the conduct which constituted the alleged improper conduct and actual damages had already ensued. *Tritt*, supra.

{¶ 58} In short, SERB did not abuse its discretion in finding that the ULP charge was untimely filed and on that basis dismiss the charge.

{¶ 59} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

KENNETH W. MACKE
MAGISTRATE